## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA
## IN ADMIRALTY

| | | |
|---|---|---|
| **GREAT LAKES INSURANCE SE,** | : | |
| **Plantation Place** | : | **CASE NO.** |
| **30 Fenchurch Street** | : | |
| **London EC3M 3AJ** | : | |
| **United Kingdom** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **RAIDERS RETREAT REALTY** | : | |
| **CO., LLC** | : | |
| **P.O. Box 549** | : | |
| **Abington, PA 19001** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW the Plaintiff, GREAT LAKES INSURANCE SE, by and through its undersigned attorneys, and for its Complaint seeking this Court's Declaratory Judgment would respectfully state as follows:

## JURISDICTION AND VENUE

1.      This is an action for declaratory relief pursuant to Title 28 of the United States Code, sec. 2201 et seq, in that a present controversy exists between the parties hereto in which the Plaintiff asks this Court to adjudicate and determine the rights of the parties to a contract of marine insurance which is in dispute.

2.     Venue lies within the Eastern District of Pennsylvania as this cause arises out of a policy of marine insurance delivered by Plaintiff to the Assured named therein, the Defendant RAIDERS RETREAT REALTY CO., LLC, alleged to be located at PO Box 549, Abington, PA 19001, USA.

3.     This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction pursuant to Title 28 of the United States Code, sec. 1333.

4.     Plaintiff, GREAT LAKES INSURANCE SE, (hereinafter "GREAT LAKES") is a corporation organized and existing under the laws of the United Kingdom, with its office and principal place of business located in the United Kingdom, in the City of London.

5.     Upon information and belief, the Defendant RAIDERS RETREAT REALTY CO., LLC (hereinafter "RAIDERS") is a limited liability company organized and existing under the laws of the State of Pennsylvania and is a citizen of the State of Pennsylvania.

**FACTUAL ALLEGATIONS**

6.     On or about October 25, 2007, the Defendant "RAIDERS" submitted to the Plaintiff, via Defendant's agent, an application for a policy of marine insurance. Such a submission was a routine aspect of the Plaintiff's procedure for considering whether to agree to provide insurance coverage regarding a 1988 70 ft Viking vessel with Detroit twin 900 hp diesel engines which was alleged to be owned by the said Defendant.

7.      A true and correct copy of the said application form completed and signed by Defendant, and submitted to Plaintiff on or about October 25, 2007 by and on behalf of the Defendant' by its agent is attached hereto as Exhibit "A."

8.      In reliance upon the material facts disclosed in Exhibit "A," Plaintiff agreed to issue a policy of marine insurance to the Defendant "RAIDERS."

9.      Plaintiff agreed to renew the coverage afforded to the Defendant under the original policy of marine insurance for every following year thereafter up to and including 2018.

10.     At the time of the renewal for the 2016-2017 policy, the Defendant submitted via its agent a Renewal Questionnaire, a Marine Survey, and a Letter of Survey Recommendations Compliance.

11.     A true and correct copy of the Renewal Questionnaire, dated September 30, 2016 is attached hereto as Exhibit "B."

12.     A true and correct copy of the Marine Survey submitted to the Plaintiff by the Defendant's agent, dated October 18, 2016 is attached hereto as Exbibit "C."

13.     At Page 26 of the Marine Survey dated October 18, 2016, under the heading FINDINGS & RECOMMENDATIONS, it is stated

> Priority 1 recommendation:
>
> *Halon system, service and date tag.
> *Fire extinguishers, purchase and store aboard.

14.     A true and correct copy of the Letter of Survey Recommendations Compliance submitted to the Plaintiff by Defendant's agent, dated October 26, 2016 is attached hereto as Exhibit "D."

15.     In reliance upon the material facts disclosed in the Renewal Application, the Marine Survey and the Letter of Survey Compliance Recommendations Compliance, Plaintiff agreed to issue a policy of marine insurance for the period from November 5, 2016 through November 5, 2017.

16.     In continued reliance upon the material facts disclosed in the Renewal Application, the Marine Survey and the Letter of Survey Compliance Recommendations, the Plaintiff agreed to renew the coverage afforded to the Defendant for the period from November 5, 2017 through November 5, 2018.

17.     Via their agents, the Defendant "RAIDERS" sought to again renew for the existing policy of marine insurance for the period from November 5, 2018 through November 5, 2019 for the 1988 70 ft Viking vessel with Detroit twin 900 hp diesel engines which was alleged to be owned by the Defendant.

18.     As part of Plaintiff's requirements and routine procedures for renewal polices, Plaintiff required submission of a Renewal Questionnaire only.

19.     A true and correct copy of the renewal application dated October 10, 2018 is attached hereto as completed and signed by Defendant, and submitted to Plaintiff on or about October 8, 2018 by and on behalf of the Defendant' by its agent is attached hereto as Exhibit "E."

20.     In reliance upon the most recent Renewal Application, and in continued reliance upon the material information disclosed in the Marine Survey and in the letter of Survey Compliance Recommendations, Plaintiff agreed to issue a policy of marine insurance affording Hull & Machinery coverage in the amount of $550,000.00 on the vessel which was alleged to be owned by the said Defendant based upon the representations set forth in, and the material information disclosed in the documents which are attached hereto as Exhibit "A," "B," "C," "D," and "E."

21.     A true and correct copy of Plaintiff's Policy No. CSRYP/171163 affording coverage in the amount of $550,000.00 for the period from November 5, 2018 through November 5, 2019 on the 1988 70 ft Viking vessel with Detroit twin 900 hp diesel engines which was alleged to be owned by the said Defendant is attached hereto as Exhibit "F."

22.     On or about June 7, 2019, it is alleged by the Defendant that the vessel insured under Plaintiff's Policy No. CSRYP/171163 was involved in an incident in which it sustained damage due to having run aground, which incident is alleged to have occurred in the vicinity of Fort Lauderdale, Florida.

23.     Upon receipt of notice of the loss referenced herein, Plaintiff caused an investigation to be made into the facts and circumstances surrounding the said incident.

24.     As a result of the investigation referenced herein, the Plaintiff established that at the time of the incident of June 7, 2019, the vessel's fire extinguishers had not been recertified or inspected as represented by the Defendant.

25.     As a result of the investigation referenced herein, the Plaintiff established that the recommendations set forth in the October 18, 2016 survey which was submitted at the time of the submission of the 2016 renewal, which recommendations were represented as having been

completed in the Letter of Survey Recommendations Compliance were not in fact completed.

26.     Notwithstanding the facts established by Plaintiff's investigation, Defendant has made a claim against the Plaintiff under the terms of Policy No. CSRYP/171163 demanding indemnification for the full extent of the damages which it is alleged to have been sustained by the vessel which was insured under the terms of the said policy.

**FIRST CAUSE OF ACTION**

27.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 26 as if set forth fully herein.

28.     Plaintiff's policy states, in pertinent part:

    9.   General Conditions & Warranties

******

    d)      This insuring agreement incorporates in full your application for insurance and it constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

******

    n)      This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

29.     The Defendant breached the provisions of Plaintiff's policy set forth above by

misrepresenting or by failing to disclose facts and/or circumstances which were material to the Plaintiff's decision to accept and/or to continue the risk of insuring the 1988 70 ft Viking vessel with Detroit twin 900 hp diesel engines alleged to have been owned by the Defendant.

30.     The Defendant misrepresented and/or failed to disclose the material facts with regard to work and/or repairs and/or maintenance alleged to have been completed, as referenced in the attached Letter of Survey Recommendations Compliance.

31.     Had the Defendant disclosed the material facts or circumstances referenced herein, the Plaintiff would not have agreed to issue its Policy No. CSRYP/171163, or would have issued a different policy, or would have charged a higher premium for the policy.

32.     The Defendant's misrepresentation or failure to disclose material facts or circumstances constitutes a breach of the duties imposed upon the Defendant by the express terms of the policy and under the applicable principles of federal maritime law.

33.     Defendant's breach of the policy renders the said policy void *ab initio* and/or entitles the Plaintiff to rescind the policy.

34.     Notwithstanding the lack of any coverage under the Plaintiff's policy of marine insurance, the Defendant has made demand upon Plaintiff for payment of damages as set forth in the said policy.

35.     As a result of the aforesaid lack of coverage under the terms of Plaintiff's policy of marine insurance attached hereto, Plaintiff has sustained actual prejudice and seeks this Court's declaratory judgment regarding the coverage afforded under the terms of Policy No. CSRYP/171163. Until such time as the Plaintiff is able to have its rights and responsibilities construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and

obligations under the terms of the said policy.

36.     As a result of the Defendant's demands for payment under the terms of the attached policy of marine insurance, and as a result of the lack of any coverage for the alleged grounding or theft of the vessel under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policy of marine insurance, and a *bona fide*, actual and present dispute exists calling for this Court's declaratory judgment.

## SECOND CAUSE OF ACTION

37.     Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 6 through 26 as if set forth fully herein.

38.  Plaintiff's policy states, in pertinent part:

<u>9.  General Conditions & Warranties</u>

******

k)     If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

39.     As stated herein the investigation conducted by the Plaintiff established that the Defendant had not complied with the express warranty referenced herein and since the vessel's fire

extinguishers had not been recertified and/or inspected and therefore the Defendant breached the express warranty set forth in Policy No. CSRYP/171163.

40.    The condition of the vessel's fire extinguishers  was contrary to the express warranty in the policy of marine insurance, the Defendant was in direct violation of the said express warranty set forth in Plaintiff's policy of marine insurance and therefore was in breach of the duties imposed upon the Defendant by the express terms of the Plaintiff's policy.

41.    The Defendant's breach of the express warranty set forth in the Plaintiff's policy of marine insurance renders the said policy void *ab initio* and/or entitles the Plaintiff to declare the said policy void.

42.    The Defendant's breach of the warranty set forth in the Plaintiff's policy of marine insurance permits the Plaintiff to avoid liability for the costs of repairing or replacing the vessel as a result of the incident of June 7, 2019.

43.    Notwithstanding the said breach of an express warranty and the lack of any coverage under Plaintiff's policy of marine insurance, the Defendant has made demand upon Plaintiff for payment of an amount equal to the full amount necessary to effect repairs to, or in the alternative, to replace, the vessel insured under the terms of the said policy of marine insurance.

44.    As a result of the Defendant's breach of an express warranty and the aforesaid lack of coverage under the terms of the terms of the policy attached hereto, the Plaintiff has sustained actual prejudice and seeks this Court's Declaratory Judgment regarding the coverage afforded under the terms of Policy No. CSRYP/171163.  Until such time as the Plaintiff is able to have its rights and responsibilities under the marine insurance policies construed by this Court, Plaintiff will suffer uncertainty with respect to its responsibilities and obligations under the terms of the said policies.

45.     As a result of the Defendant's demands for payment under the terms of the policy of marine insurance attached hereto, and as a result of the lack of any coverage for the loss under the facts and circumstances described herein, a real and justiciable issue exists with respect to the existence of valuable rights under the terms of the policies of marine insurance, and a bona fide, actual and present dispute exists calling for this Court's Declaratory Judgment.

WHEREFORE, Plaintiff demands judgment from the Court:

(A)     Declaring that the relationship of insurer and insured does not exist between Plaintiff and Defendant "RAIDERS" as regards the incident in which the insured vessel was damaged;

(B)     Declaring that Plaintiff's Policy No. CSRYP/171163 does not afford coverage to the Defendant "RAIDERS" for the incident in which the insured vessel was damaged;

(C)     Declaring that Plaintiff's Policy No. CSRYP/171163 excludes coverage to the Defendant for the incident in which the insured vessel was damaged;

(D)     Declaring that any coverage afforded under Plaintiff's Policy No. CSRYP/171163 is void from the inception due to Defendant's breach of warranty;

(E)     Declaring that Defendant's misrepresentations of and/or failure to disclose facts material to the Plaintiff's acceptance or continuance of the risk voids the Plaintiff's Policy No. CSRYP/171163 *ab initio* and allows the Plaintiff to rescind the said policy;

(G).     Any and all such other and further relief as the Court may deem proper and appropriate in the premises.

Dated:          September 25, 2019

> DEASEY, MAHONEY & VALENTINI, LTD.
> Attorneys for Plaintiff
> 1601 Market Street, Suite 3400
> Philadelphia, PA 19103
> Tel (215) 587-9400
> Fax (215) 587-9456
>
> By:  _____
>          GEORGE R. ZACHARKOW, ESQ.
>
> GOLDMAN & HELLMAN
> Attorneys for Plaintiff
> 8751 W. Broward Boulevard
> Suite 404
> Fort Lauderdale, Florida 33324
> Tel (954) 356-0460
> Fax (954) 832-0878

# Exhibit "A"

Page 1 of 4

# ATLASS SPECIAL RISKS, INC.

## YACHT/CHARTER BOAT APPLICATION

www.atlassspecialrisks.com

INSUREDS NAME
PHILLIP PULLEY

INSUREDS D.O.B.
FEBRUARY 2, 1962

PRODUCER NAME & ADDRESS
GREG JONES
CHRISTI INSURANCE GROUP
P.O. BOX 579
320 BICKLEY ROAD
GLENSIDE PA 19038

BENEFICIAL OWNER (REQUIRED IF POLICY IS IN A COMPANY NAME)
*Raiders Retreat Realty Co, LLC*

FULL MAILING ADDRESS:
P.O. BOX 549
ABINGTON, PA 19001

OCCUPATION: REAL ESTATE MANAGEMENT

VESSEL NAME: RAIDERS

EFFECTIVE DATE FROM 11/05/07   TO 11/05/08

IF LAID UP: NONE

LOCATION:

LOSS PAYEE – NAME & ADDRESS:

TO:   ☐ ASHORE
      ☐ AFLOAT

COVERAGES WILL NOT BE PROVIDED UNLESS REQUESTED HEREON

| COVERAGES | SUM INSURED | EQUIPMENT | | | | |
|---|---|---|---|---|---|---|
| HULL – PHYSICAL DAMAGE | 700,000 | BILGE PUMPS | X | GENERATOR DIESEL/GAS | D | PRIMARY POWER (IF OTHER DETAIL): | | SAIL |
| TENDER/DINGHY | 9,000 | COOKING STOVE | X | SHIP TO SHORE RADIO | X | | | OUTBOARD |
| PERSONAL PROPERTY | 5,000 | FLAME DETECTOR | | SATNAV/ OMEGA | | | X | INBOARD |
| TRAILER | | CO2/HALON SYSTEM | | LIFE RAFT | | | | INBOARD/ OUTDRIVE |
| MEDICAL PAYMENTS | 10,000 | FIRE EXTINGUISHERS | X | OTHER (LIST BELOW) | | | | OTHER |
| LIABILITY COVERAGE | 1,000,000 | ANTI-THEFT DEVICES | X | | | TYPE OF VESSEL (IF OTHER DETAIL): | X | SAILBOAT |
| CREW LIABILITY | 1,000,000 | LORAN/ DIRECTION FINDER | | | | | X | MOTOR YACHT |
| OWNER OPERATOR M&C | | | | | | | | SPORTSFISHER |
| | | DEPTH SOUNDER | X | | | | | CRUISER |
| COMMERCIAL PASSENGER LIABILITY | | | | | | | | PERFORMANCE |
| | | RADAR | X | | | HULL MATERIAL (IF OTHER DETAIL): | | HOUSEBOAT |
| UNINSURED BOATERS | 100,000 | | | | | | | FIBREGLASS |
| | | SONAR | | | | | | STEEL |
| BREACH OF WARRANTY (FOR LOSS PAYEE ONLY) | | EPIRB | X | | | | | ALUMINIUM |
| | | | | | | | | WOOD |
| NON-EMERGENCY TOWING | | GPS | X | | | | | KEVLAR |
| | | | | | | TYPE OF HULL (IF OTHER DETAIL): | X | CARBON FIBRE |
| OTHER: POLLUTION LIABILITY | 50,000 | ENGINE ALARM | X | | | | | MONOHULL |
| | | | | | | | | CATAMARAN |
| | | | | | | FUEL TANK | X | METAL |
| | | | | | | | | FIBREGLASS |

| VESSEL INFORMATION | | | | | | |
|---|---|---|---|---|---|---|
| LENGTH | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE | MAX SPEED | HULL IDENTIFICATION NO: | |
| 70 | OCTOBER 2004 | 700,000 | 700,000 | 20 KNTS | VKY70101B888 | |

| REGISTRATION NO: DOC #940474 | VESSEL FLAG: *USA* | MANUFACTURER/MODEL: VIKING/ ~~SPORTFISH~~ *motor yacht* |

THEFT PRECAUTIONS:
*~~a~~rm system tied into*
*~~al~~phure system*

MAIN MOORING/STORAGE LOCATION (FULL ADDRESS):
*2319 NE 29th ST*
*Lighthouse Point FLA 33064*

Page 2 of 4

# ATLASS SPECIAL RISKS, INC.

## YACHT/CHARTER BOAT APPLICATION

www.atlassspecialrisks.com

TENDERS OR DINGHIES: 2007 YAMAHA (PERSONAL WATERCRAFT) MODEL: VX150 HULL ID NUMBER: ⊗ Title # 9866528
NOVURANTA PKD0 9961G897   14' 50 Hp   ⊗ YAMA4090E707

WATERS TO BE NAVIGATED (YOU MAY ATTACH AN ITINERARY- PLEASE NOTE EXTENDED NAVIGATION REQUIRES SUPPLEMENTARY SHEET): EAST COAST US, FLORIDA & BAHAMAS NOT EXCEEDING 150 MILES OFFSHORE AND NOT SOUTH OF THE TROPIC OF CANCER (23.5 DEGREES N. LAT.)

VESSEL LOCATION JULY 1ST - NOV 1ST (INCLUDING CO-ORDINATES IF KNOWN)
⊗ 2315 NE 29th Street   26° 16' 04.45 N   80° 05 29.00 W
Light House Point   FLA

### ENGINE/OUTBOARD MOTOR INFORMATION

| ENG | H.P. | GASOLINE | | DIESEL | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|---|---|---|---|
| 1 | 900 | | X | | 1988 | | | |
| 2 | 900 | | X | | 1988 | | | |
| 3 | | | | | | | | |

| MANUFACTURER/MODEL | SERIAL NUMBER |
|---|---|
| DETROIT | 12VA81910 |
| DETROIT | 12VA81979 |

| DATE VESSEL LAST SURVEYED | ASHORE/AFLOAT | HAS SURVEY BEEN SUPPLIED TO UNDERWRITER: Y/N |
|---|---|---|
| | | |

| TRAILER INFORMATION | YEAR | DATE PURCHASED | PURCHASE PRICE | PRESENT VALUE |
|---|---|---|---|---|
| | | | | |

MANUFACTURER/MODEL:                                    SERIAL NUMBER:

OPERATORS (ALWAYS LIST INSURED AS OPERATOR #1) ALL OPERATORS MUST BE DETAILED - USE SEPARATE SHEET IF NECESSARY PLEASE NOTE THIS OPERATORS INFORMATION CONSISTS OF THREE PARTS (A, B & C)

| A | NAME | D.O.B. | STATE OF RESIDENCE | VIOLATIONS/SUSPENSIONS (INCLUDING AUTO) IN LAST 5 YEARS |
|---|---|---|---|---|
| 1 | PHILLIP PULLEY | 02/02/62 | PA | ⊗ None |
| 2 | ANTHONY CHARLIE PASTOR | 07/13/83 | ⊗ Phillapicos | ⊗ None |
| 3 | | | | |

| B | BOATING QUALIFICATIONS | YEARS OF BOAT OWNERSHIP | YEARS OF BOATING EXPERIENCE |
|---|---|---|---|
| 1 | USCG AUX | 30 | 30+ |
| 2 | ⊗ Trained in boat operation | | 7 |
| 3 | By Kim Holt Captain | | |

| C | DETAILS OF PREVIOUS VESSELS OWNED |
|---|---|
| 1 | OCT 2004 - PRESENT VIKING 70', UNIFLIGHT 50', GRADY WHITE 21' |

GENERAL INFORMATION - IF YOU ANSWER 'YES' TO ANY OF THE QUESTIONS BELOW PLEASE GIVE FULL DETAILS ON NEXT PAGE

| # | | YES | NO | # | | YES | NO |
|---|---|---|---|---|---|---|---|
| 1 | IS THE BOAT CHARTERED TO OTHERS WITH CAPTAIN? | | X | 6 | IS THE BOAT USED COMMERCIALLY OR FOR BUSINESS PURPOSES? | | X |
| 2 | IS THE BOAT CHARTERED TO OTHERS WITHOUT CAPTAIN? | | X | 7 | WILL THE VESSEL BE OPERATED SINGLE HANDED AT NIGHT? | | X |
| 3 | WILL THE VESSEL BE USED FOR RACING DURING THE POLICY PERIOD? | | X | 8 | HAVE YOU OR ANY NAMED OPERATOR BEEN INVOLVED IN A MARINE LOSS IN THE LAST 10 YEARS (INSURED OR NOT)? | X | |
| 4 | IS THE BOAT USED FOR WATER SKIING OR DIVING WHETHER OR NOT VESSEL IS OPERATED COMMERCIALLY | X | | 9 | WAS ANY INSURANCE DECLINED, CANCELLED OR NON-RENEWED IN THE LAST 5 YEARS? | X | |
| 5 | IS THE BOAT USED FOR FARE PAYING PASSENGERS? IF YES: | | X | 10 | DOES THE APPLICANT EMPLOY PAID CREW? | X | |
| | WHAT IS THE NUMBER OF PASSENGERS PER TRIP (MAXIMUM & AVERAGE) | MAX | AVG | | IF SO, HOW MANY?  ONE FULL TIME CREW | | |
| | NUMBER OF TRIPS PER YEAR | | | 11 | DOES ANYONE RESIDE ABOARD THE VESSEL? | ⊗ | X |

sleep on board
cooks on shore

Page 3 of 4                    **ATLASS SPECIAL RISKS, INC.**

                          YACHT/CHARTER BOAT APPLICATION

                                                    *www.atlassspecialrisks.com*

**GUIDANCE NOTES:**

| | | |
|---|---|---|
| 1 | IS THE BOAT CHARTERED TO OTHERS WITH CAPTAIN? | Please complete supplementary sheet CAPTAIN CHARTER |
| 2 | IS THE BOAT CHARTERED TO OTHERS WITHOUT CAPTAIN? | Please complete supplementary sheet BAREBOAT CHARTER |
| 3 | WILL THE VESSEL BE USED FOR RACING DURING THE POLICY PERIOD? | Please complete supplementary sheet RACING |
| 6 | IS THE BOAT USED COMMERCIALLY OR FOR BUSINESS PURPOSES? | Please detail usage in Information Box below |
| 10 | DOES THE APPLICANT EMPLOY PAID CREW? | Please complete supplementary sheet CREW |

**INFORMATION (IF THIS SPACE IS NOT SUFFICIENT PLEASE NOTE BELOW AND USE A SEPARATE SHEET):**

RECREATIONAL DIVING
OCTOBER 24, 2005 HURRICANE WILMA PAID $150,000
#9: INAMAR NON RENEWED DUE TO VESSEL BEING MOORED IN FLORIDA 12 MONTHS A YEAR

**PLEASE READ BEFORE SIGNING APPLICATION**

1. This application will be incorporated in its entirety into any relevant policy of insurance where insurers have relied upon the information contained therein.

2. Any misrepresentation in this application for insurance will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to the application.

3. A photograph of the vessel is required to be submitted with this application.

4. Fraud Statement – please see page 4 of this application form & initial the paragraph relevant to you to indicate that you have read and understood this.

| APPLICANT SIGNATURE: | PRINT NAME & STATE YOUR CONNECTION TO THIS POLICY IF YOU ARE NOT THE NAMED INSURED/BENEFICIAL OWNER | SIGNATURE DATE: |
|---|---|---|
| | | 10/25/07 |

# Exhibit "B"



# Renewal Questionnaire

**Quote Number:** 364629A

**Previous Policy:** CSRYP/153294

**Next Policy Period:** November 5, 2016 to November 5, 2017

**Assured:** Raiders Retreat Realty Co., LLC

**Assured's Address:** PO Box 549, Abington, PA 19001, USA

**Scheduled Vessel:** Raiders, 1988 70' Viking with Detroit Twin 900hp diesel engine, VKY70101B888

**Cover and Respective Insured Limits:**

| Section | Expiring Coverage | Currently Quoted Coverage | Revised Coverage |
|---|---|---|---|
| **A Hull** | US$ 550,000 | US$ 550,000 | |
| Hull Deductible | US$ 33,000 | US$ 33,000 | |
| Tender/Dinghy | US$ 9,000 | US$ 9,000 | |
| Non-Emergency Towing | US$ 500 | US$ 500 | |
| Breach of Warranty | not covered | not covered | |
| **B Third-Party Liability** CSL | US$ 1,000,000 | US$ 1,000,000 | |
| Crew Liability Extension within CSL | US$ 1,000,000 | US$ 1,000,000 | |
| **C Medical Payments** | US$ 10,000 | US$ 10,000 | |
| **D Uninsured Boaters** | US$ 550,000 | US$ 550,000 | |
| **E Trailer** | not covered | not covered | |
| **F Personal Property** | US$ 5,000 | US$ 5,000 | |
| Other (Please specify) | | | |

**Residence:** Will your vessel be your full-time residence during the next policy period?

Yes / No

Concept Special Risks Ltd
+44 (0) 1943 882 700   www.special-risks.co.uk
Unity House   7 Station Court   Station Road   Guiseley   LEEDS   LS20 8EY   United Kingdom

Renewal Questionnaire page 7                                    Concept Special Risks Ltd

**Surveys:**                 Your next survey is due on **November 5, 2016** and should be
                             performed **out of the water** (hauled).

**Navigational Limits:**     Warranted that the Scheduled Vessel is confined to **East Coast
                             USA, Florida and the Bahamas - not to exceed 150 miles
                             offshore.**

                             If you require different navigational limits to these, please detail
                             here or attach an itinerary.

**Hurricane Mooring:**       Your vessel mooring location during July 1st to November 1st is
                             currently declared as **2319 NE 29th St, Lighthouse Point, FL
                             33064, USA, 26.267911 -80.091434.** If this is incorrect please detail
                             below, providing the full address, ZIP/postal code and longitude/
                             latitude readings of the new mooring location:

                             Will your vessel will be afloat or ashore during the hurricane
                             season?

                             Afloat / Ashore

**Loss Payees:**             Your previous policy had the following loss payees: Assured. If you
                             need any additional loss payees, please name them here.

**Operators:**               The four individuals detailed on the following pages are approved
                             by us to operate the Scheduled Vessel.

                             Please ensure all persons (including captains and crew) operating
                             the vessel during the policy period are listed in the following pages,
                             and that all details are complete, accurate and up to date. Delete
                             any operator no longer required.

                             **Warning: This is a named-operator-only policy.**

Renewal Questionnaire page 3                                    Concept Special Risks Ltd

**Operator 1:**        Please ensure the details provided for **Philip Pulley** are complete,
                       accurate and up to date. If you are unsure what information to
                       provide, please contact your broker who will be able to assist you.
                       If Philip Pulley no longer operates the Scheduled Vessel, please
                       cross out the table below.

| Name | Philip Pulley |
|------|---------------|
| Date of birth | February 2, 1962 |
| State of residence | Pennsylvania, USA |
| Years of boat ownership | 43 |
| Years of boating experience | 45 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid licence is held**<br>Various courses<br>Coast Guard Aux<br>Power Squadron<br>Sea Scout<br>Boat US | |
| **Details of previous vessels owned and/or operated**<br>70' Viking<br>21' Grady White<br>50' Uniflite<br>25' Seacraft<br>Operated:<br>112' West Port<br>118' Benetti | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>Hurricane Wilma- 24th October 2005- $150,000 | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

Renewal Questionnaire page 4                                      Concept Special Risks Ltd

**Operator 2:**          Please ensure the details provided for **Kim Holt** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Kim Holt no longer operates the Scheduled Vessel, please cross out the table below.

| Name | Kim Holt |
| --- | --- |
| Date of birth | January 24, 1954 |
| State of residence | Florida, USA |
| Years of boat ownership | 48 |
| Years of boating experience | 52 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid licence is held**<br>Licensed captain 100 ton | |
| **Details of previous vessels owned and/or operated**<br>30'-80' vessels | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*<br>None | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

Renewal Questionnaire page 5                                                      Concept Special Risks Ltd

**Operator 3:**      Please ensure the details provided for **Ruby Marrero** are
complete, accurate and up to date. If you are unsure what
information to provide, please contact your broker who will be able
to assist you. If Ruby Marrero no longer operates the Scheduled
Vessel, please cross out the table below.

| | |
|---|---|
| **Name** | Ruby Marrero |
| **Date of birth** | January 1, 1975 |
| **State of residence** | Florida, USA |
| **Years of boat ownership** | 0 |
| **Years of boating experience** | 18 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid licence is held**<br>Cuban Navy 7 years<br>Florida Safe Boating | |
| **Details of previous vessels owned and/or operated**<br>50' Military<br>250 Military | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*<br>None | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

Renewal Questionnaire page 6                                          Concept Special Risks Ltd

**Operator 4:**    Please ensure the details provided for **Benjamin Pulley** are
complete, accurate and up to date. If you are unsure what
information to provide, please contact your broker who will be able
to assist you. If Benjamin Pulley no longer operates the Scheduled
Vessel, please cross out the table below.

| Name | Benjamin Pulley |
|---|---|
| Date of birth | September 7, 1992 |
| State of residence | Pennsylvania, USA |
| Years of boat ownership | 9 |
| Years of boating experience | 15 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid licence is held**<br>Florida Boaters License | |
| **Details of previous vessels owned and/or operated**<br>21' Grady White<br>38' Trojan<br>40' Carver<br>80' Hargrave<br>89' Ferretti<br>76' Monte Carlo | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*<br>None | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

Renewal Questionnaire page 7                                                Concept Special Risks Ltd

**Operator 5:**          Below you may add an additional operator for approval by our
                         underwriters. If you wish to add several operators, please print and
                         submit as many copies of this page as required.

| |
|---|
| **Name** |
| **Date of birth** |
| **State of residence** |
| **Years of boat ownership** |
| **Years of boating experience** |
| **Violations and suspensions (including auto) in the last five years** |
| **Boating qualifications for which a valid licence is held** *Example: USG 100 Ton Licence* |
| **Details of previous vessels owned and/or operated** *Example: 2005 40 ft Whitby Ketch, owned for 6 years* |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status** *Example: 2005, Hurricane Loss, $20,000 Paid, Closed* |
| **Details of all criminal convictions and pleas of no contest** |

Renewal Questionnaire page 8                                          Concept Special Risks Ltd

**Other Changes:**     When quoting your renewal, we have assumed that there have
been no changes to your policy during the current policy period. If
there are any other changes since your original application form
was submitted to us, please give details below. If you are unsure
whether any change might have an influence upon the quotation
that we have provided you with, please contact your broker for
advice.

**Misrepresentations:**   Any misrepresentation in this renewal questionnaire will render
insurance coverage null and void from inception. Please therefore
check to make sure that all questions have been fully answered
and that all facts material to your insurance have been disclosed, if
necessary by a supplement to this questionnaire.

**Assured's Signature:**

**Print Name:**

**Date of Completion:**        9/30/2016.

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement
wordings, standard forms and frequently asked questions, please see our website
www.special-risks.co.uk.

# Exhibit "C"

# MARINE SURVEYORS & CONSULTANTS
## 618 NE 3RD STREET
## DANIA BEACH, FL. 33004

kerrynikula@me.com                    Phone: 954 232 3416

## REPORT OF MARINE SURVEY

### INSURANCE CONDITION & VALUATION
Of the vessel

### "RAIDERS"
#### 1988 70' Viking Motor Yacht



### PREPARED EXCLUSIVELY FOR:
**Phil Pulley**
P.O. Box 549
Abington, PA. 19001

### CONDUCTED BY:
**Kerry Nikula** SAMS. SA. ABYC. NFPA.

ON
October 18, 2016

Raiders_UF000016

# SURVEY REPORT TABLE OF CONTENTS

                                                                    Page #

HIN PAGE ............................................................................. 3

DOCUMENT / REGISTRATION PAGE ................................... 4

SURVEY SCOPE & GENERAL INFORMATION ..................... 5-7

GENERAL INFORMATION .................................................. 8

EXTERIOR ......................................................................... 9-12

INTERIOR ........................................................................ 12-14

MACHINERY ..................................................................... 14,15

TRANSMISSIONS & RUNNING GEAR ................................ 16

ELECTRICAL SYSTEMS ................................................... 17-19

TANKS ............................................................................. 20,21

BOTTOM & HULL SIDES .................................................. 21,22

FIRE & SAFETY ................................................................ 22-24

DISCRIPTION .................................................................. 24-26

RECCOMENDATIONS ....................................................... 26

CLOSING STATEMENT & SIGNATURE PAGE .................... 27

Raiders_UF000017

# "RAIDERS"



# VKY70101B888

## 1988 70' Viking Motor Yacht

Surveyed for: Phil Palley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS, SA, ABYC, NFPA.

Report file #: 5085
Page 3 of 27

Raiders_UF000018

Raiders_UF000019

# DOCUMENTATION PAGE

Data found in current database.

| | | | |
|---|---|---|---|
| Vessel Name: | RAIDERS | USCG Doc. No.: | 940474 |
| Vessel Service: | RECREATIONAL | IMO Number: | * |
| Trade Indicator: | Recreational | Call Sign: | * |
| Hull Material: | FRP (FIBERGLASS) | Hull Number: | VKY70101B888 |
| Ship Builder: | * | Year Built: | 1988 |
| | | Length (ft.): | 69.5 |
| Hailing Port: | PHILADELPHIA PA | Hull Depth (ft.): | 9.7 |
| Owner: | RAIDERS RETREAT REALTY CO LLC 1241 WELCH ROAD HUNTINGDON VALLEY PA 19006) PO BOX 549 ABINGTON, PA 19001 | Hull Breadth (ft.): | 17.3 |
| | | Gross Tonnage: | 78 |
| | | Net Tonnage: | 62 |
| Documentation Issuance Date: | May 04, 2016 | Documentation Expiration Date: | April 30, 2017 |
| Previous Vessel Names: | MARGARITA LOU KIPENDA ROHO DAYBREAK WAYNE'S WORLD | Previous Vessel Owners: | RAIDERS RETREAT REALTY CO LLC RAIDERS RETREAT REALTY CO LLC RAIDERS RETREAT REALTY CO LLC RAIDERS RETREAT REALTY CO LLC RAIDERS RETREAT REALTY CO LLC BLTT INC KIPENDA ROHO LLC MOTIVATIONAL INCENTIVES INC |

Surveyed for: Phil Pulley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS, SA, ABYC, NFPA.

Report file #: 5085
Page 4 of 27

Raiders_UF000020

## SURVEY SCOPE & GENERAL INFORMATION

### SCOPE OF SURVEY

| | |
|---|---|
| **Report file #:** | 5085 |
| **Name of vessel:** | **RAIDERS** |
| **Inspection Date(s):** | October 18, 2016 |
| **Date of written report:** | October 20, 2016 |
| **Conducted by:** | Kerry Nikula SAMS. SA. ABYC. NFPA. |
| **Requested by:** | Phil Pulley phil@sbgmanagement.com 215 669 2658 |
| **Owned by:** | Raiders Retreat Realty Co. LLC. |
| **In the presence of:** | Surveyor only |
| **Purpose of survey:** | Assess the overall condition and value of vessel for insurance considerations. |
| **Navigation limits:** | To underwriter's requirements |
| **Vessel survey location:** | While hauled ashore at Apex Marine, Pompano Beach, FL. |
| **Sea Trial:** | Sea trial not requested or carried out during this survey |
| **Electrical systems checked:** | AC shore power was used to check AC power systems. Vessels batteries were used to check DC electrical systems. A qualified electrical surveyor did not carry out an electrical survey. |
| **Engine Survey:** | Engines & generator were not surveyed during this inspection. |
| **Underwater areas:** | The underwater areas were fully sounded with a phenolic hammer and inspected visually. |
| **Running gear:** | The running gear was fully inspected and found to be in good condition. |

**Hull sides:**   The hull sides were fully inspected while the vessel was hauled ashore and found to be in good condition with no major dings or scratches noted. The swim platform was found securely installed on the transom.

## VESSEL CONDITION & VALUE

**Condition rating:**   Above average

**Estimated fair market value as of October 20, 2016: 550,000 U.S. DOLLARS**

**Estimated replacement value as of October 20, 2016: 4,000,000 U.S. DOLLARS**

**NOTE:**   *Values are dependent on the limiting conditions and assumptions noted in this report. These values are statements of opinion. No guarantee can be given that these opinions of value will be sustained or that they will be realized in an actual transaction.*

**NOTE:**   *The overall vessel condition and value was established after a complete inspection of stated vessel, the results of which are included in the body of this report. The estimated fair market value and replacement cost is based on recent selling prices of similar vessels of like type, age, manufacturer, condition, power & equipment, all fairly depreciated. Also on knowledge of local market, Yahctworld.com, Soldbosts.com, BUC book and other materials at hand.*

## SURVEY STANDARDS

**Standards followed:**   *This survey was completed using as reference the federal regulations and amendments issued and enforced by the United States Coast Guard under the authority of Title 33 and Title 46 of the United States Code of Federal Regulations (CFR's). In addition the American Boat and Yacht Council (ABYC) and National Fire Protection Association (NFPA-302) voluntary standards were used as reference during the survey. Most vessel manufacturers generally follow these ABYC and NFPA voluntary standard practices today.*

Raiders_UF000022

## SURVEY INSPECTION COMMENTS

**Comments:**    *All systems and components inspected and described herein are considered serviceable and/or functional except as indicated in the survey report and recommendations section. Electronic devices and instruments were checked for power up and functionality. If a component is not identified in this report, it was not inspected.

* "Priority 1 recommendations" are related to Safety & Regulatory findings and are listed in the first section of recommendations in this report.

* "Priority 2 recommendations" are related to maintenance & Standards findings and are listed in the second section of recommendations in this report.

* "Other recommendations" are "findings" that are relatively minor and cosmetic in nature and are listed in the third section of recommendations in this report.

* It is the nature of salt-water marine vessels that deterioration, wear and accidents do occur and as such, this report therefore represents the condition of the vessel only at the time of inspection.

* The US Power Squadron offers relatively inexpensive boating safety classes for both new and seasoned boaters and will better prepare any boater for use of a power or sailing vessel on open waters. Many Insurance companies offer premium discounts upon successful completion of these classes. Recommended that it is checked with your local US Power Squadron office for availability of these classes.

Surveyed for: Phil Pulley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS. SA. ABYC. NFPA.

Report file #: 5085
Page 7 of 27

Raiders_UF000023

# GENERAL INFORMATION

## VESSEL SPECIFICATIONS

| | |
|---|---|
| Vessel Name: | RAIDERS |
| Hull ID (HIN) # | VKY70101B888 |
| Document #: | 940474 |
| Hailing port: | OLD YORK ROAD (On transom)<br>PHILADELPHIA, PA. (On document) |
| Gross tons: | 78 |
| Net tons: | 62 |
| Molded Depth: | 9.7' |
| Manufacturer/Builder: | VIKING |
| Designer: | AS ABOVE |
| Model Year: | 1988 |
| Year Built: | 1988 |
| Power: | TWIN DIESEL |
| Type: | MOTOR YACHT |
| L.O.A.: | 69' 6" |
| Beam: | 17' 4" |
| Draft: | 4' 9" |
| Displacement: | 73,300 lbs. Reported |

Remarks & Recommendations: Please see pages 4-27.

The subject vessel at this inspection is deemed to be an acceptable fire and marine risk subject to compliance with the "Priority 1" recommendations listed on page 26 in the body of this report.

Raiders_UF000024

## EXTERIOR



| | |
|---|---|
| **Construction:** | Cored molded fiberglass decks w/ non-skid |
| **Super structure:** | Cored molded fiberglass, white |
| **Frames:** | Integral fiberglass |
| **Deck Beams:** | Integral fiberglass |
| **Bulkheads:** | Plywood tabbed to hull and deck |
| **Stem:** | Raked & Flared |
| **Stern:** | Transom |
| **Safety Lines:** | Stainless steel wire w/ vinyl over + handrails & stanchions |
| **Bow pulpit:** | Stainless steel |
| **Bow Sprit:** | Fiberglass w/ stainless steel anchor roller bracket |
| **Anchor:** | Plow w/ 20' chain & 150' rode. Approx. lengths, run out & check |
| **Windlass:** | "Ideal" vertical, electric |
| **Swim platform:** | Fiberglass w/ ladder |
| **Transom gate/door:** | Yes |
| **Deck winches:** | N/A |

Surveyed for: Phil Pulley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS, SA, ABYC, NFPA.

Report file #: S085
Page 9 of 27

Raiders_UF000025

| | |
|---|---|
| Rod holders: | Yes + rocket launcher type |
| Outriggers: | N/A |
| Deck hardware: | Stainless steel & chromed bronze |
| Covers: | For exterior seating & windshields |
| Bimini top: | White |
| Bimini top frame: | Stainless steel |
| Lines: | Twelve |
| Fenders: | Four large & two medium |
| Refrigerator(s): | N/A |
| Freezer(s): | N/A |
| Icemaker(s): | N/A |
| Overall condition: | Above average |

**FLY BRIDGE**

 

| | |
|---|---|
| Helm: | Forward on the centerline |
| Seating: | Three helm chairs + aft to port & built in on fore deck |
| Sun lounge: | N/A |
| Wet bar: | N/A |

Raiders_UF000026

| Enclosure: | N/A |
|---|---|
| Radar arch: | Yes |
| Davit: | "Nautical Structures" aluminum w/ hydraulic winch |
| Overall condition: | Above average |

## NAVIGATION ELECTRONICS:

 

| **Fly Bridge:** | **Lower Helm:** |
|---|---|
| Compass: 6" Danforth | 6" Danforth |
| Auto Pilot: Raymarine ST8002 | Raymarine ST8002 |
| Radar: Raymarine E120 | N/A |
| GPS: Garmin 741 XS | Northstar 952X |
| GPS: Raymarine E120 | Raytheon Nav398 |
| GPS: Northstar 952X | Northstar 800 Loran C |
| Chart plotter: In above GPS's | Northstar 952X |
| VHF: Icom IC-M412 | Raytheon Ray 220 |
| VHF: West Marine | Icom IC-M412 in cockpit |
| Fishfinder: Furuno FCV-292 | N/A |
| Depth finder: In above + Datamarine | Datamarine |

Surveyed for: Phil Palley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS. SA. ABYC. NFPA.

Report file #: 5085
Page 11 of 27

Raiders_UF000027

Fly Bridge:                                          Lower Helm:

Speed log: In GPS's                                  In GPS's

Wind gauge: N/A                                      Datamarine

Sat. TV: KVH Trac Vision

Other: "Viewsonic" & "RCA" monitors at lower helm

Other: JRC NCR-300 A Navtex receiver at lower helm

Overall condition: Above average

## INTERIOR

 

| Interior finish: | Teak |
| --- | --- |
| Trim: | As above |
| Floors: | Carpets throughout + marble in galley |
| Ceilings: | Vinyl |
| # of staterooms: | Four |
| # of enclosed heads: | Three |
| # of showers: | Three + deck shower |
| Side deck doors: | Port & starboard in pilothouse |
| Escape hatches: | Forward stateroom overhead hatch |

Raiders_UF000028

Bilge access:      Engine room, guest companionway, forward & master
                   staterooms

Overall condition:   Above average

## ENTERTAINMENT ELECTRONICS



Televisions: LG in salon & master stateroom + Quasar in guest staterooms

VCR/DVD's: LG Blueray DVD in salon + Quasar VCR in guest staterooms

Stereos: Sony AV receiver in salon + Sony AM/FM CD players in master
         stateroom & on fly bridge

Printers / Scanners: N/A

Overall condition: Above average

## GALLEY & MISC. EQUIPMENT



Location of galley:    Forward to port

Location of dinette:   Former to port in salon + fly bridge table

Raiders_UF000029

Stovetop: 4 Burner "Kitchenaid", electric

Stovetop shut offs: At stovetop & breaker

Oven: "Gaggenau" electric

Microwave: "Panasonic"

Convection oven: In main oven

Ventilation: Adequate

Refrigeration: "Whirlpool" side by side

Freezer: As above

Icemaker: "U-line" in salon + in freezer w/ door dispenser

Hot water heater: 20 gallon electric "Seaward"

Washer / Dryer: "Kenmore" stack type

Dishwasher: "Whirlpool"

BBQ: "Magma" portable type

Galley counter type: Solid surface

Overall condition: Above average

## MACHINERY

 

Engine location: Aft below aft deck

Raiders_UF000030

| | |
|---|---|
| Number & type: | Two |
| Make: | DETROIT DIESEL 12V 71 TA |
| Model: | Port: 7122–7600      Starboard: 7122–7800 |
| Port serial #: | 12VA81910 |
| Starboard serial #: | 12VA81979 |
| Engine hours: | Port: 3829.5 (guaranteed)      Starboard: 347.9 (Accuracy not guaranteed) |
| Horsepower: | 900 each |
| # of cylinders: | Twelve |
| R.P.M.: | 2300 |
| Alarm system: | Yes |
| Engine bed: | Fiberglass stringers w/ flexible mounts |
| Cooling system: | Fresh water |
| Primary fuel filters: | 2 x Racor in-line for each main engine |
| Secondary filters: | Bowls on engines |
| Fuel pump: | Mechanical |
| Exhaust mufflers: | Yes |
| Exhaust tubes: | Hose & fiberglass tubes |
| Engine controls: | Twin lever Hynautic |
| Synchronizer: | "Glendinning" |
| Overall condition: | Above average |

Surveyed for: Phil Pailey – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS, S.A. ABYC, NFPA.

Report file #: 5085
Page 15 of 27

Raiders_UF000031

## TRANSMISSIONS & RUNNING GEAR

 

| | |
|---|---|
| Type: | ZF |
| Model: | BW 190 |
| Reduction ratio: | 2.03:1 |
| Port serial #: | 665 |
| Starboard serial #: | 664 |
| Trolling valve: | N/A |
| Propellers: | Four blade Nibral 32" x 33.5" + 2 x four blade spare's |
| Propeller shafts: | Stainless steel 2 ½" diameter |
| Rudders: | Bronze spades |
| Bow thruster: | 2 x 4 blade in 10 ½" tube, electric |
| Stabilizers: | "Naiad" #254 w/ 45" x 28" fins |
| Trim tabs: | Stainless steel double ram |
| Steering: | Hydraulic |
| Helm stations: | Two + cockpit controls |
| Overall condition: | Above average |

Surveyed for: Phil Pulley – 198X 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS. SA. ABYC. NFPA.

Report file #: 5085
Page 16 of 27

Raiders_UF000032

## ELECTRICAL

### GENERATOR(S)



| | |
|---|---|
| Type: | Kilopak |
| Model: | BCl 184 El |
| Serial #: | X07A050185 |
| Hours: | Not sighted |
| Kilowatts: | 23 |
| Voltage: | 120/240 single phase |
| Cycles: | 60 Hz |
| RPM's: | 1800 |
| Cylinders: | Four |
| Cooling system: | Fresh water |
| Ventilation: | Adequate |
| Exhaust: | Hose & fiberglass tube |
| Muffler: | Yes |
| Fuel pump: | Mechanical |
| Primary filter: | Racor in-line for each generator |
| Secondary filter: | Bowl on engines |

Surveyed for: Phil Polley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS, SA, ABYC, NFPA.

Report file #: 5085
Page 17 of 27

Raiders_UF000033

| Max Amps: | N/A |
|---|---|
| Overall condition: | Above average |

## SHORE POWER

 

| Receptacles: | 4 x 250 volt x 50 Amp, two on power reels |
|---|---|
| Power cords: | 4 x 250 volt x 50 Amp, two on power reels |
| Power conversion: | N/A |
| AC Elec. panels: | In pilothouse |
| DC Elec. panels: | As above |
| Overall condition: | Above average |

## BATTERIES & CHARGERS

 

Battery installation: 6 x 12 Volt 8D between engines

Battery installation: 4 x 12 Volt in forward bilge

Surveyed for: Phil Pulley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS, SA, ABYC, NFPA.

Report file #: 5085
Page 18 of 27

Raiders_UF000034

| | |
|---|---|
| 12 Volt chargers: | 60 Amp "Sentry" |
| 24 Volt chargers: | 20 Amp "Pro Mariner" |
| Ventilation: | Into machinery space + AGM sealed type in forward bilge |
| DC converter: | N/A |
| Drip pans: | Fiberglass & plastic boxes w/ lids |
| Secure: | Yes |
| Battery switches: | Four approved type |
| Overall condition: | Above average |

MISCELLANEOUS

| | |
|---|---|
| Air conditioning: | "Cruise Air" |
| Heating: | Reverse cycle in the above |
| Air compressor: | Yes |
| Wiring: | Thermoplastic were sighted |
| Adapters: | N/A |
| Lights: | 24 volt DC & 110 volt AC |
| Bonding system: | Throughout |
| Battery isolators: | N/A |
| Eng. rm. blowers: | 24 volt DC |
| Vent fans: | 110 Volt AC |
| Overall condition: | Above average |

Surveyed for: Phil Pulley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS, SA, ABYC, NFPA.

Report file #: 5085
Page 19 of 27

Raiders_UF000035

## TANKS

### FUEL

| | |
|---|---|
| **Number:** | Three |
| **Total Capacity:** | 1,340 Gallons, reported |
| **Material:** | Fiberglass |
| **Shape:** | Rectangular |
| **Fuel type:** | Diesel |
| **Location:** | Port & starboard below cockpit deck + forward in engine room |
| **Bonded:** | Yes |
| **Secure:** | Yes |
| **Valve location:** | In-line |

### WATER

| | |
|---|---|
| **Number:** | One |
| **Total Capacity:** | 350 Gallons, reported |
| **Material:** | Fiberglass |
| **Shape:** | Rectangular |
| **Location:** | Below cockpit deck on the centerline |

### BLACK WATER (SEWAGE)

| | |
|---|---|
| **Number:** | One |
| **Total Capacity:** | Gallons not reported |
| **Material:** | Fiberglass |
| **Shape:** | Rectangular |
| **Location:** | Below guest stateroom sole |

Raiders_UF000036

| Type: | Sumps |
| --- | --- |
| Location: | In local bilges |
| Overall condition: | Above average |

---

## HULL, BOTTOM & HULL SIDES

 

| Material: | Molded fiberglass w/ black anti-fouling paint |
| --- | --- |
| Boot stripe: | Black |
| Keel: | Full |
| Prop. Protection: | Hull, keel & struts |
| Bilges aft: | Clean & dry |
| Bilges forward: | Clean & dry |
| Bilges eng. room: | Clean & dry |
| Zincs (Anodes): | 2 on bow thruster, 1 per trim tab, 1 per shaft + Dynaplate |
| Thru' hull fittings: | Bronze below water line w/ bronze & plastic above, all found serviceable |

Surveyed for: Phil Pulley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS, SA, ABYC, NFPA.

Report file #: 5085
Page 21 of 27

Raiders_UF000037

 

| | |
|---|---|
| **Material:** | Cored molded fiberglass, white |
| **Rub rails:** | Stainless steel |
| **Portholes:** | Stainless steel |
| **Engine rm. vents:** | Aluminum |
| **Overall condition:** | Above average |

## FIRE FIGHTING & SAFETY GEAR

### FIRE EXTINGUISHERS

 

| | |
|---|---|
| **Built in system:** | "Fireboy" |
| **Type:** | Halon 1301 |
| **Tank location:** | In engine room |
| **Inspection date:** | Expired |

Raiders_UF000038

| | |
|---|---|
| Automatic release: | Yes |
| Manual release: | Yes |
| Shut downs: | Main engines & generator |
| Hand held: | Seven x 2 ½ lb., + two 5 lb. Dry powder |
| Inspection date: | Expired |
| Aux. fire pump: | Deck wash downs |
| Dewatering pumps: | 4 x 24 volt submersible type w/ float switches |
| Engine driven pps: | N/A |
| Comments: | *Halon system, service and date tag. *Fixed fire extinguishing systems maintenance- ABYC A-4 Ap.6.3 At one-year intervals, a full maintenance check should be made by a qualified fire extinguishing system service facility in accordance with the manufacturers maintenance instructions. A tag should be attached showing the date of such maintenance check.* |
| | *Fire extinguishers, service and date tag. *Portable fire extinguisher maintenance- ABYC A-4 Ap.5.4.2 At least once a year, a full maintenance check should be made by a qualified fire extinguishing service facility in accordance with the maintenance instructions on the name plate of the extinguisher. A tag should be attached showing the date of such maintenance check.* |

## LIFE JACKETS (PFD's)

| | |
|---|---|
| Type "I": | Adult: Eight |
| Type "II": | Adult: Forty |
| Type "III": | Adult: Twelve |
| Throw cushions: | Three |
| Life rings: | One w/ floating throw line attached + Life Sling |
| Life rafts: | N/A |

Surveyed for: Phil Pulley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS, SA, ABYC, NFPA.

Report file #: 5085
Page 23 of 27

Raiders_UF000039

| | |
|---|---|
| **Red hand held:** | **Four** |
| **Expiry date:** | 6/2018 |

<u>MISCELLANEOUS</u>

| | |
|---|---|
| **EPIRB:** | **"ACR" 406** |
| **Expiry date:** | 7/2017 |
| **First aid kit:** | **Yes** |
| **Smoke detectors:** | **Throughout vessel** |
| **Fume detectors:** | **Throughout vessel** |
| **Rules of road book:** | Yes |
| **Horn:** | **Yes** |
| **Bell:** | **Yes** |
| **U.S.C.G. notices:** | **Yes. Oil pollution, garbage disposal placards and waste (black water) discharge notice** |
| **Navigation lights:** | **All working** |
| **Anchor lights:** | **All working** |
| **Search light:** | **2 x "Jabsco" w/ full functions** |
| **Comments:** | **N/A** |

## VESSEL WRITE UP / DESCRIPTION

**Exterior:**

The vessel comes with the standard layout and as listed previously in this report was well found. All equipment was found in good condition. This is a wide body motor yacht with the side decks only accessed from the port and starboard side deck doors in the pilothouse. The anchor windlass was found securely installed on the centerline with access to the chain locker through a hatch on the forward bulkhead in the forward stateroom.

Raiders_UF000040

**Exterior:**

There is a built in bench seat forward of the raised trunk with good storage below. The deck hatch forward of the built in seating is an escape hatch for the forward stateroom.

**Fly Bridge:**

The fly bridge was found clean and neat with good seating. The helm was found on the centerline with all engine controls, gauges and electronics all easy to hand. There are three helm seats aft of the helm. The large seating is aft to port and starboard with good storage below the seating and a large two pedestal table inboard of the port seating. This area is well protected by the large Bimini top. The hatch to the aft deck stairs in aft to starboard and a large sun lounge area is aft to the seating with a stainless steel safety rail aft and to port and starboard. The dinghy is installed on the centerline aft with the dinghy davit installed aft to starboard.

**Cockpit:**

The cockpit on this vessel is factory installed and provides easy handling of docking lines with deck hatches to access the steering gear, aft fuel tanks and water tank. The port and starboard fuel tanks are both leaking fuel and will have to be repaired. These are fiberglass tanks and should be easy to repair.

The transom gate is aft to starboard for access to the large swim platform and a large console is forward to starboard with very good storage inside. The stairs to the aft deck are forward to port.

**Aft Deck:**

This is of an adequate size with access to the salon through double doors on the centerline forward with the aft deck engine controls to starboard. The fly bridge overhang protects this area.

**Interior:**

The interior comes with the standard layout that includes a good size salon that comes with good seating and storage. There are four large sofas aft to port and starboard with consoles between. Forward of the port sofas is a console where the large flat screen TV and entertainment equipment are installed. The stairs to the fly bridge, master stateroom and engine room and large console are all forward of the starboard sofas. Forward to port is the formal dining table with six chairs.

The galley is forward to port and was found clean and neat with all equipment in good working condition. This area is open to the salon with the pass thru' to the wheel house, side deck doors and stairs to the guest staterooms to starboard.

Raiders_UF000041

**Interior:**

The cabins were all found clean and neat with each head also found in good condition. Aft and full beam is the very large master stateroom with a king size bed on the centerline, large hanging lockers to port and a console with drawers to starboard. A desk and chair is forward with the large flat screen TV installed on the bulkhead forward of the desk. The bathroom and separate stall shower are forward to port.

There is a laundry room forward to port of the master stateroom with lockers to starboard and entry to the engine room to port through the laundry room.

The guest staterooms are accessed from the stairs forward to starboard of the wheel house. The port stateroom comes with a double size bed with a hanging locker inboard. The starboard stateroom comes with twin single bed and good storage in lockers and drawers. The head to these staterooms is accessed from the companion way to port.

The forward stateroom comes with twin single upper and lower berths, good storage and the head and separate stall shower aft to starboard.

**Lower Helm:**

This is located forward on the centerline and was found good. All engine controls; gauges and electronics are all easy to hand. There is a raised built in bench seat aft with port and starboard side deck doors and the stairs to the guest staterooms forward to starboard. Visibility is adequate from this station.

**Machinery Space:**

This area is accessed from the utility room forward of the master stateroom. There is full standing headroom with good access to all of the machinery to carry out all service work. Both main engines are reported to run well with the generator reported to carry the entire vessels electrical load.

The vessel "RAIDERS" is in above average condition and is well maintained by her knowledgeable owner.

## FINDINGS & RECCOMMENDATIONS

Priority 1 recommendations:

*Halon system, service and date tag.
*Fire extinguishers, purchase and store onboard.

Raiders_UF000042

## SEA TRIAL CLOSING STATEMENT & SIGNATURE

**TRIAL RUN DATA:**

| | PORT ENGINE: | | | | STARBOARD ENGINE: | | | | | | SPEED |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | R.P.M. | WATER TEMP. | OIL PRESS | DRIVE OIL | R.P.M. | WATER TEMP. | OIL PRESS. | DRIVE OIL | % LOAD | GPH PER ENG | FROM GPS IN KNOTS |
| SLOW | | | | | | | | | | | |
| CRUISE | | | | | | | | | | | |
| CRUISE | | | | | | | | | | | |
| FULL | | | | | | | | | | | |
| SEA TRIAL WAS NOT REQUESTED OR PERFORMED BY THIS SURVEYOR | | | | | | | | | | | |

The underwater areas were fully inspected visually and with a phenolic hammer with no gel-coat blisters or delamination noted. The anti-fouling paint was found serviceable.

All of the vessels running gear was inspected and found good.

All of the vessels through hull valves were inspected and tried for ease of movement and all were found serviceable.

The valuation on page #6 for the vessel mentioned in this report is intended for insurance and valuation purposes only and is not intended to influence the purchase or none purchase of subject vessel.

The tanks were not full at the time of this inspection and it is suggested they be filled to prove integrity.

The above represents the opinion of the undersigned based on the facts presented and the discoveries made while surveying subject vessel, with no warranty either specific or implied being made.


Respectfully submitted,


Kerry Nikula
Attending surveyor
Signed without prejudice
October 20, 2016

SAMS. SA. ABYC. NFPA.

Surveyed for: Phil Pulley – 1988 70' Viking Motor Yacht "RAIDERS"
Surveyed by: Kerry Nikula, SAMS. SA. ABYC. NFPA.

Report file #: 5085
Page 27 of 27

Raiders_UF000043

# Exhibit "D"

Page 1 of 1          **Concept Special Risks Ltd**          www.special-risks.co.uk

Letter of Survey Recommendations Compliance

Assured Name: *Raiders Retreat Realty Co, LLC*

Assured Address: *P.O Box 549  Abington PA 19001*

Policy Number: *Renewal of CSRYP/153294*

Surveyor and Date of Survey: *Nikula Marine Service Inc. October 18, 2016*

Vessel: *"Raiders" 1988  70' Viking  HIN: VKY 70101B888*

I certify, as owner of the above vessel, that all recommendations pertaining to the above
vessel contained within the detailed survey submitted herein, have been complied with.,
other than those listed below, along with the date of expected completion (please
reference the recommendation number as detailed on the survey where appropriate):

| Outstanding Recommendation (s) | Expected Completion Date |
|---|---|
| N/A | |
| | |
| | |
| | |
| | |
| | |

**Details of Boat Yard or Repair Facility Employed:**

Contact: _____

Address: _____

_____

**WARNING:**

Any misrepresentation in this letter of compliance may render insurance coverage
null and void from inception.

Assured Signature: _____

Date: *Oct 26, 2016*

CSR/LOC/1

# Exhibit "E"



# Renewal Questionnaire

| | |
|---|---|
| **Quote Number:** | 392324B |
| **Previous Policy:** | CSRYP/163367 |
| **Next Policy Period:** | November 5, 2018 to November 5, 2019 |
| **Assured:** | Raiders Retreat Realty Co., LLC |
| **Assured's Address:** | PO Box 549, Abington, PA 19001, USA |
| **Scheduled Vessel:** | Raiders, 1988 70' Viking with Detroit twin 900hp diesel engine, VKY701018888 |

**Cover and Respective Insured Limits:**

| Section | Expiring Coverage | Currently Quoted Coverage | Revised Coverage |
|---|---|---|---|
| **A Hull** | US$ 550,000 | US$ 550,000 | |
| Hull Deductible | US$ 33,000 | US$ 33,000 | |
| Tender/Dinghy | US$ 9,000 | US$ 9,000 | |
| Non-Emergency Towing | US$ 500 | US$ 500 | |
| Breach of Warranty | not covered | not covered | |
| Tender 2 | US$ 9,000 | US$ 9,000 | |
| **B Third-Party Liability** CSL | US$ 1,000,000 | US$ 1,000,000 | |
| Crew Liability Extension within CSL | US$ 1,000,000 | US$ 1,000,000 | |
| **C Medical Payments** | US$ 10,000 | US$ 10,000 | |
| **D Uninsured Boaters** | US$ 550,000 | US$ 550,000 | |
| **E Trailer** | not covered | not covered | |
| **F Personal Property** | US$ 5,000 | US$ 5,000 | |
| Other (Please specify) | | | |

**Residence:**          Will your vessel be your full-time residence during the next policy period?

Yes  No

Concept Special Risks Ltd
+44 (0) 1943 882 700   www.special-risks.com
Unity House   2 Station Court   Station Road   Guiseley   LEEDS   LS20 8EY   United Kingdom

Concept Special Risks Ltd

**Surveys:**              Your next survey is due on **November 5, 2019** and should be performed **out of the water** (hauled).

**Navigational Limits:**  Warranted that the Scheduled Vessel is confined to **East Coast USA, Florida and the Bahamas - not to exceed 150 miles offshore.**

If you require different navigational limits to these, please detail here or attach an itinerary.

**Hurricane Mooring:**    Your vessel mooring location during July 1st to November 1st is currently declared as **2319 NE 29th St, Lighthouse Point, FL 33064, USA, 26.2679086 -80.091365.** If this is incorrect please detail below, providing the full address, ZIP/postal code and longitude/latitude readings of the new mooring location:

Will your vessel will be afloat or ashore during the hurricane season?

(Afloat) Ashore

**Loss Payees:**          Your previous policy had the following loss payees. Assured. If you need any additional loss payees, please name them here.

**Operators:**            The five individuals detailed on the following pages are approved by us to operate the Scheduled Vessel.

Please ensure all persons (including captains and crew) operating the vessel during the policy period are listed in the following pages, and that all details are complete, accurate and up to date. Delete any operator no longer required.

**Warning: This is a named-operator-only policy.**

Renewal Questionnaire page 3                                    Concept Special Risks Ltd

**Operator 1:**     Please ensure the details provided for **Philip Pulley** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Philip Pulley no longer operates the Scheduled Vessel, please cross out the table below.

| | |
|---|---|
| Name | Philip Pulley |
| Date of birth | February 2, 1962 |
| State of residence | Pennsylvania, USA |
| Years of boat ownership | 43 |
| Years of boating experience | 45 |
| **Violations and suspensions (including auto) in the last five years** None | |
| **Boating qualifications for which a valid licence is held** Various courses Coast Guard Aux Power Squadron Sea Scout Boat US | |
| **Details of previous vessels owned and/or operated** 70' Viking 21' Grady White 50' Uniflite 25' Seacraft Operated: 112' West Port 118' Benetti | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status** Hurricane Wilma- 24th October 2005- $150,000 | |
| **Details of all criminal convictions and pleas of no contest** None | |

Renewal Questionnaire page 4

Concept Special Risks Ltd

**Operator 2:**

Please ensure the details provided for **Kim Holt** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Kim Holt no longer operates the Scheduled Vessel, please cross out the table below.

| | |
|---|---|
| Name | Kim Holt |
| Date of birth | January 24, 1954 |
| State of residence | Florida, USA |
| Years of boat ownership | 48 |
| Years of boating experience | 52 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid licence is held**<br>Licensed captain 100 ton | |
| **Details of previous vessels owned and/or operated**<br>30'-80' vessels | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*<br>None | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

Renewal Questionnaire page 5

Concept Special Risks Ltd

**Operator 3:**

Please ensure the details provided for **Ruby Marrero** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Ruby Marrero no longer operates the Scheduled Vessel, please cross out the table below.

| Name | Ruby Marrero |
|---|---|
| Date of birth | January 1, 1975 |
| State of residence | Florida, USA |
| Years of boat ownership | 0 |
| Years of boating experience | 18 |

**Violations and suspensions (including auto) in the last five years**

None

**Boating qualifications for which a valid licence is held**

Cuban Navy 7 years
Florida Safe Boating

**Details of previous vessels owned and/or operated**

50' Military
250' Military

**All losses in the past 10 years (whether insured or not), including payment amounts and current status**

*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*
None

**Details of all criminal convictions and pleas of no contest**

None

Renewal Questionnaire page 6                                      Concept Special Risks Ltd

**Operator 4:**     Please ensure the details provided for **Benjamin Pulley** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Benjamin Pulley no longer operates the Scheduled Vessel, please cross out the table below.

| Name | Benjamin Pulley |
|---|---|
| Date of birth | September 7, 1992 |
| State of residence | Pennsylvania, USA |
| Years of boat ownership | 9 |
| Years of boating experience | 15 |

**Violations and suspensions (including auto) in the last five years**
None

**Boating qualifications for which a valid licence is held**
Florida Boaters License

**Details of previous vessels owned and/or operated**
21' Grady White
38' Trojan
40' Carver
80' Hargrave
89' Ferretti
76' Monte Carlo

**All losses in the past 10 years (whether insured or not), including payment amounts and current status**
*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*
None

**Details of all criminal convictions and pleas of no contest**
None

Raiders_UF000050

Renewal Questionnaire page 7

Concept Special Risks Ltd

**Operator 5:**

Please ensure the details provided for **Miles Sheahan** are complete, accurate and up to date. If you are unsure what information to provide, please contact your broker who will be able to assist you. If Miles Sheahan no longer operates the Scheduled Vessel, please cross out the table below.

| Name | Miles Sheahan |
|---|---|
| Date of birth | December 18, 1963 |
| State of residence | TBD |
| Years of boat ownership | 0 |
| Years of boating experience | 30 |
| **Violations and suspensions (including auto) in the last five years**<br>None | |
| **Boating qualifications for which a valid licence is held**<br>USCG 100 Ton license | |
| **Details of previous vessels owned and/or operated**<br>80' Viking<br>66' Marquis<br>54' Azimut<br>80' AZIMUT | |
| **All losses in the past 10 years (whether insured or not), including payment amounts and current status**<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed*<br>None | |
| **Details of all criminal convictions and pleas of no contest**<br>None | |

Renewal Questionnaire page 8

**Operator 6:**

Below you may add an additional operator for approval by our under-writers. If you wish to add several operators, please print and submit as many copies of this page as required.

| Name |
|---|
| Date of birth |
| State of residence |
| Years of boat ownership |
| Years of boating experience |
| Violations and suspensions (including auto) in the last five years |
| Boating qualifications for which a valid licence is held<br>*Example: USCG 100 Ton Licence* |
| Details of previous vessels owned and/or operated<br>*Example: 2005 40 ft Whitby Ketch, owned for 6 years* |
| All losses in the past 10 years (whether insured or not), including payment amounts and current status<br>*Example: 2005, Hurricane Loss, $20,000 Paid, Closed* |
| Details of all criminal convictions and pleas of no contest |

Renewal Questionnaire page 9                                          Concept Special Risks Ltd

**Other Changes:**   When quoting your renewal, we have assumed that there have been no changes to your policy during the current policy period. If there are any other changes since your original application form was submitted to us, please give details below. If you are unsure whether any change might have an influence upon the quotation that we have provided you with, please contact your broker for advice.

**Misrepresentations:**   Any misrepresentation in this renewal questionnaire will render insurance coverage null and void from inception. Please therefore check to make sure that all questions have been fully answered and that all facts material to your insurance have been disclosed, if necessary by a supplement to this questionnaire.

**Assured's Signature:**

**Print Name:**   phili p puily

**Date of Completion:**   10/8/2018

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

Raiders_UF000053

# Exhibit "F"


Concept Special Risks

# Policy Schedule

| | |
|---|---|
| **Policy Number:** | CSRYP/171163 |
| **Assured:** | Raiders Retreat Realty Co., LLC |
| **Assured's Address:** | PO Box 549<br>Abington<br>PA 19001<br>USA |
| **Assured's Agent:** | Hull & Company - Fort Lauderdale<br>1815 Griffin Rd, Suite 300<br>Dania Beach<br>FL 33004 |
| **Scheduled Vessel:** | Raiders, 1988 70' Viking with Detroit twin 900hp diesel engine, VKY70101B888 |

| | |
|---|---|
| **Period of Cover:** | from November 5, 2018 00.01 LST to November 5, 2019 00.01 LST |

**Cover and Respective Insured Limits:**

| Section | Sum Insured | Deductible |
|---|---|---|
| **A Hull** | US$ 550,000 | US$ 33,000 |
| (Named Windstorm Deductible) | | US$ 66,000 |
| Tender/Dinghy | US$ 9,000 | US$ 900 |
| Non-Emergency Towing | US$ 500 | not applicable |
| Tender 2 | US$ 9,000 | US$ 900 |
| **B Third-Party Liability** CSL | US$ 1,000,000 | US$ 500 |
| Crew Liability Extension within CSL | US$ 1,000,000 | US$ 2,500 |
| **C Medical Payments** | US$ 10,000 | US$ 100 |
| **D Uninsured Boaters** | US$ 550,000 | not applicable |
| **E Trailer** | not covered | not applicable |
| **F Personal Property** | US$ 5,000 | US$ 500 |

| | |
|---|---|
| **Total Premium:** | US$ 9,691 cancelling returns only + US$ 35 Certificate Fee |
| | In the event of cancellation by the Assured minimum of 25% of premium deemed earned. |
| **Named Operators:** | Philip Pulley; Kim Holt; Ruby Marrero; Benjamin Pulley; Miles Sheahan |
| **Laid Up Period:** | None |

**Concept Special Risks Ltd**
+44 (0) 1943 882 700 · www.special-risks.com
Unity House · 2 Station Court · Station Road · Guiseley · LEEDS · LS20 8EY · United Kingdom

Policy Schedule CSRYP/171163 page 2                                    Concept Special Risks Ltd

**Navigational Limits:**   Warranted that the Scheduled Vessel is confined to East Coast USA, Florida and the Bahamas - not to exceed 150 miles offshore.

**Insuring Agreement Wording:**
As per SYP/8/PPO. Including liability to one paid crew within Combined Single Limit.

**Additional Warranties, Terms and Conditions:**
Warranted that the Scheduled Vessel is not to navigate south of the Tropic of Cancer July 1st to November 1st.

**Insurance Provider:**   Great Lakes Insurance SE

**Loss Payee:**   Assured

**Signed:**   Wednesday November 7, 2018

For and on behalf of Participating Underwriters/Insurers

Surplus lines insurers' policy rates and forms are not approved by any Florida regulatory agency.

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

Concept Special Risks                    www.special-risks.co.uk

## PRIVATE AND PLEASURE YACHT INSURING AGREEMENT

## 1. DEFINITIONS

a)   'You and your' refer to the insured named on the declaration page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the Scheduled Vessel or as an additional assured.

b)   'We, us and our' refer to the insurers named on the declaration page or accompanying schedule of insurers.

c)   'Covered person' means you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us as an operator of the Scheduled Vessel.

d)   'Scheduled Vessel' means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, and all other equipment normally required for the operation and maintenance of the vessel and situate on the Scheduled Vessel, which would normally be sold with the vessel. This does not include spare parts of the Scheduled Vessel, the Scheduled Vessel's life raft, tender or dinghy, unless the same has been  declared on the declaration page, nor does it include any items being stored on premises other than on-board the Scheduled Vessel.

e)   'Trailer' refers to the Scheduled Vessel's trailer, used exclusively for that purpose.

f)   Words of a masculine gender are deemed to encompass the female gender and vice versa.  Words in the singular are deemed to encompass the plural and vice versa.

g)   'Navigational limits' means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h)   'Salvage charges' means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life or to prevent or minimise any further loss or damage covered by Section A of your insuring agreement.

i)   'Deductible' is the first amount of any claim, which must be paid by you.  If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount will be deducted from the amount payable on each admissible claim.

j)   'Bodily injury/property damage' means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the Scheduled Vessel.

k)   'Seaworthy' means fit for the Scheduled Vessel's intended purpose.  Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew.  For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l)   'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

m)   'Personal Property' means property purchased and owned by you, any covered person, any member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding any item that is deemed to be part of the Scheduled Vessel as defined in (d) above.

Concept Special Risks                    www.special-risks.co.uk

n)     'Race or speed trial' means any event involving speed and/or of a competitive nature, including, but not limited to, Regattas and/or Rallies.  'Preparing for a race or speed trial' means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

o)     'Named Windstorm' damage is damage relating to or resulting from a named windstorm or any numbered tropical weather pattern from the time the named windstorm or numbered tropical weather pattern impacts the area and until 72 hours later. The area of the named windstorm or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

p)     'Divers' means any person using underwater artificial breathing apparatus, and/or submersible mechanical or electrical device including, but not limited to, Submarines, Diving Bells and/or Diving Suits.

q)     'Operate, Operation, Operating' means to navigate or to be in physical control of or to be at the helm of the Scheduled Vessel.

r)     'Sinking' means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged underwater.

s)     'Constructive' or 'Compromised' Total Loss means where we determine that either the reasonable cost of repairs exceed the sum insured, or where the net value being the sum insured, less the residual value of the Scheduled Vessel, is exceeded by or in our opinion is likely to be exceeded by the reasonable cost of repairs.

t)     'Agreed Value' means the sum insured under Section A of the insuring agreement declaration page or any endorsement to the same.

u)     'Combined Single Limit' (CSL) means the maximum amount we will pay towards any sum or sums that you or any other covered person become legally liable to pay and shall pay as a result of any one accident or occurrence arising from your operation of the Scheduled Vessel.  If the insuring agreement declaration page shows multiple liability limits, the maximum amount we will pay in total in respect of any one accident or occurrence or series of accidents or occurrences arising from a single event, is limited to the amount shown as the Combined Single Limit irrespective of the number of claims or claimants arising from the said accident , occurrence or single event and in no circumstances shall there be any aggregation of liability limits shown on the insuring agreement declaration page in excess of the Combined Single Limit hereunder.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you.  We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

## 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of, or accidental physical damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss incurred and covered by this insuring agreement will be paid by us whether successful or not. These will be paid in addition to the sum

insured under Sections A and F.   Our maximum liability for these expenses is 50% of the sum insured under Section A of this insuring agreement less the deductible shown under Sections A and F.

If a sum insured is shown for "Non Emergency Towing" on the insuring agreement declaration page, this represents the maximum amount per incident or event and for the duration of this policy, that we will pay in respect of expenses incurred by you for such charges, where the Scheduled Vessel is in no immediate danger, but are incurred in good faith to prevent loss or damage to the Scheduled Vessel.
We will pay salvage charges incurred by you in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this insuring agreement, up to the limit of the sum insured under Section A of this insuring agreement less the deductible shown under Section A.

If the Scheduled Vessel shall come into collision with any other ship or vessel and you, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the Scheduled Vessel hereby insured, we will reimburse you such amount paid, up to the agreed value hereby insured, less the deductible shown under Section A.

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the insured vessel or for loss of life or personal injury, or for loss of income, value or otherwise of any other vessel or person. In no case shall our maximum liability exceed the sum insured hereunder.

The deductible shown under Section A of the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive and/or compromised total loss of the Scheduled Vessel. In the event of loss or damage arising from a named windstorm the deductible detailed below shall apply.

Loss or damage to the Scheduled Vessel arising from a named or numbered windstorm shall be subject to a deductible which shall apply to all claims, including actual and/or constructive and/or compromised total loss of the insured vessel, equal to double the deductible as shown on the declaration page under Sections A and/or F of the insuring agreement.

## **Exclusions to Coverage A**

Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

a)    Loss of or damage sustained by the Scheduled Vessel whilst being transported over land (whether by trailer or other method of conveyance approved by us in writing), more than 250 miles from the normal place of storage, as disclosed within your application form.

b)    Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

c)    Marring, scratching or denting of the hull and/or equipment of the Scheduled Vessel.

d)    Osmosis, blistering or electrolysis.

e)    Manufacturing defects or design defects, including latent defects.

f)    Unrepaired damage claims if the Scheduled Vessel is subsequently deemed by us to be an actual or constructive total loss, during the insuring agreement period.

g)    Losses caused directly or indirectly by ice or freezing.

h)    Loss or damage caused intentionally by you and/or any member of your family.

i)    Theft of the Scheduled Vessel and or its equipment whilst on a trailer unless the Scheduled Vessel is situate in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

j)    Your personal expenses or those of your family including but not limited to the, cost of your own labour, hotel or accommodation costs, car rental and communication costs.

k)    Losses caused by delay in repairs and/or loss of use and/or enjoyment of the Scheduled Vessel and/or its equipment.

l)    Loss and/or damage to sails, sail covers, external canvases, including but not limited to Bimini Tops, arising from a named windstorm unless properly removed and stowed

m)   Any loss of value of the Scheduled Vessel and/or its equipment as a result of repairs and/or replacements being effected as a result of any claim hereunder.

n)    Damage existing prior to the inception date of this insuring agreement, whether you are aware of the same or otherwise.

o)    Loss or damage to the Scheduled Vessel and/or its equipment where you have abandoned the Scheduled Vessel without damage which would have resulted in a payable claim hereunder.

p)    Loss of, or damage to the Scheduled Vessel as a result of any repair yard lien being enforced, including but not restricted to the arrest or detention of the Scheduled Vessel by any repair yard.

q)    The loss of or replacement of fuel or perishable goods that are on board the Scheduled Vessel at the time of loss.

r)    Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

## 4. Coverage B.  Third Party Liability

If a sum insured is shown under Section B of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of the Scheduled Vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you, using attorneys of our choice where we deem necessary.  Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

Concept Special Risks            www.special-risks.co.uk

## **Exclusions to Coverage B**

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

a)      Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

b)      Your liability to other covered persons, your spouse, other members of your family or persons who reside in your household.

c)      Liability assumed by you under any contract or agreement.

d)      Liability which arises while the Scheduled Vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

e)      Fines or penalties imposed by any Government agency.

f)      Punitive or exemplary damages, however described.

g)      Liability due to pollution by any substance whether it be gradual, or sudden and accidental  except as provided for in the Pollution Coverage Extension of this Insuring Agreement.

h)      Intentional acts.

i)      Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute or any other compensatory statute.

j)      Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

k)      Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the Scheduled Vessel, until they are safely back on board, other than that provided under limited extension of liability for water-skiing detailed in Coverage B Water Skiing Coverage Limitation of Liability.

l)      Liability to or for divers operating from the Scheduled Vessel, from the time they commence to leave the Scheduled Vessel, until they are safely back on board.

m)      Liability to fare paying passengers or passengers carried under charter.

n)      Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

o)      Loss or damage to any other vessel caused by the operation of the Scheduled Vessel in so far as the same would have been covered under Section A of this insuring agreement.

p)      Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the sun's rays either cumulatively or suddenly.

q)      Any claim arising from directly or indirectly caused by or associated with Human Immunodeficiency Virus (HIV) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

### Coverage B, Water Skiing Coverage Limitation of Liability

Whilst the Insured vessel is being used for water skiing, the third party liability limits relating to this activity are reduced to:

| | |
|---|---|
| Property damage | US $10,000 |
| Bodily Injury | US $10,000 |
| Maximum any one incident | US $20,000 |

These limits shall apply from the time any person or persons begin to leave the Scheduled Vessel, or such activity commences, and will continue until the person or persons are safely back on board and such activity ceases completely. All other terms, warranties, conditions, exclusions, remain unaltered and in effect save for exclusion k) above.

Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability and within the Combined Single Limit.

### Coverage B, Extension to include Crew Liability

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover any sum or sums you become legally liable to pay and shall pay to hired crew resulting from injury, illness or death occurring whilst in the service of the Scheduled Vessel.
The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section B, Third Party Liability and within the Combined Single Limit.  All other terms, warranties, conditions, exclusions remain unaltered and in effect save for exclusion i) and j) above.

The deductible shown on the insuring agreement declaration page shall apply to each crew liability claim.

### Coverage B, Extension to include Limited Pollution Coverage

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (g) Coverage B Third Party Liability, we agree to indemnify you for reasonable costs incurred by you preventing or mitigating a pollution hazard or threat thereof resulting directly from damage to the scheduled vessel, where coverage is afforded under this insuring agreement, provided always that such pollution hazard or threat thereof:

a)      Was sudden, unintentional and unexpected by you.

b)      That the incident commenced during the period of this insuring agreement.

c)      It became known to you within 72 hours of its commencement.

d)      Was reported to us in writing not later than seven days after having become known to you.

e)      Was not a result of your want of due diligence or that of your managers, servants or agents to prevent or mitigate such pollution hazard to threat thereof.

These reasonable expenses must be incurred within one year from the commencement of the incident giving rise to a claim hereunder.  Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability and within the Combined Single Limit.

Concept Special Risks                    www.special-risks.co.uk

## 5. Coverage C, Medical Payments

If a sum insured is shown under Section C of the insuring agreement declaration page, we will pay reasonable medical and/or funeral expenses necessary due to accidental bodily injury or death of third parties, incurred whilst boarding, leaving or on-board the Scheduled Vessel insured under this insuring agreement.  These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under Section B of this insuring agreement, arising from the same occurrence.

This coverage will be in excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved.  Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declarations page shall apply to each claim made under this section of the insuring agreement.

## Exclusions to Coverage C

We do not provide medical payment coverage for:

a)       Covered persons, their spouses, family or other persons who reside with them.  Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b)       Responsibility assumed under any contract or agreement.

c)       Anyone injured whilst the Scheduled Vessel is being transported, hauled out or launched.

d)       Trespassers on the Scheduled Vessel.

e)       Anyone to or for whom benefits are payable under any State or Federal Workers Compensation Act including but not limited to State Workers Compensation Act, Federal Longshoreman's and Harbour Workers Compensation Act or Federal Jones Act.

## 6. Coverage D, Uninsured Boaters

If a sum insured is shown under Section D of the insuring agreement declaration page, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

We will also pay any medical expenses incurred by your lawful guests and invitees (including members of your family) as a result of any such incident giving rise to claim under this section

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

## Exclusions to Coverage D

We do not provide coverage for:

a)      Claims settled without our prior written consent.

b)      Loss due to an uninsured vessel which is a Government vessel.

c)      Loss due to a vessel owned and/or operated by a covered person.

d)      Loss where no physical damage to the Scheduled Vessel exists, evidencing collision.

e)      Any loss or damage otherwise recoverable under this insuring agreement.

f)      Bodily Injury, illness or death of any covered person.

g)      Any loss otherwise excluded by any provision of this Insuring Agreement.

## 7. Coverage E, Trailer

If a sum insured is shown under Section E of the insuring agreement declaration page, we provide coverage for accidental physical loss of or physical damage to the trailer if it is used exclusively for the transportation of the Scheduled Vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value.  Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to avert or minimise a loss covered by this insuring agreement will be paid by us, whether successful or not.  These will be paid in addition to the sum insured under Section E without application of the insuring agreement deductible.  Our maximum liability for such expenses is the sum insured under Section E.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual or constructive total loss of trailer and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement.

A deductible of 10% of the agreed value of the Scheduled Vessel trailer shall apply to each theft loss, including total loss of the trailer.  However a deductible of 5% of the agreed value of the trailer shall
apply to each theft loss, including total loss, provided the scheduled trailer is stored in a commercial storage yard or marina that provides 24 hour security.

## Exclusions to Coverage E

a)      Damages sustained by the trailer whilst the Scheduled Vessel is being transported over land, more than 250 miles from the normal place of storage, unless specifically agreed by us in writing and an additional premium paid.

b)      Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould animal or marine life.

c)      Marring, scratching or denting.

d)      Manufacturing defects or design defects, including latent defects.

e)      Tyre damage.

f)      Losses due to exceeding manufacturer's maximum load or speed specifications.

g)      Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

h)      Theft of the trailer unless the trailer is stolen from a locked and fenced enclosure or marina and there is visible evidence of forcible entry or removal made with tools, explosives, electricity or chemicals.

### 8. Coverage F, Personal Property

If a sum insured is shown under Section F of the insuring agreement declaration page, we will cover direct loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloaded from the Scheduled Vessel.  Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item,
pair or set is US$1,000.

Fishing gear and tackle, unless permanently affixed to the Scheduled Vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible and any claim made hereunder shall be adjusted in accordance with general principles of average. Where the sum insured is less than the overall actual cash value of the covered property situate on the Scheduled Vessel, we will only pay claims in the ratio that such sum insured bears to the overall cash value of the covered property situate on the Scheduled Vessel at the time of the covered loss.

### Exclusions to Coverage F

We will not cover loss or damage to or in respect of

a)      Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

b)      Fishing gear or tackle which is permanently affixed to the Scheduled Vessel, unless the Scheduled Vessel insured hereunder shall become an actual or constructive total loss, due to a covered loss.

c)      Food and or perishable items, including any type of fuel

We will not cover losses due to:

a)      Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

b)      Breakage of articles of a brittle nature unless caused by the Scheduled Vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

c)      Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the Scheduled Vessel.

d)  Theft and or damage caused by theft unless there is visible evidence of forcible entry and removal made by tools, explosives, electricity or chemicals.

## 9. General Conditions & Warranties

a)  It is warranted that the Scheduled Vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire lease or any other commercial activity.

b)  It is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception.

c)  This insuring agreement incorporates in full your application for insurance and, together with any endorsements issued herein constitutes the entire contract between us.  At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

d)  This insuring agreement does not cover any loss or damage which occurs after its expiration.  However, if you have been at sea in the Scheduled Vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the Scheduled Vessel arrives safely at its next port of call and for a further 24 hours provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

e)  This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice.  If it is cancelled by us, we will pay you a pro rata return of premium.  If it is cancelled by you, we shall pay you a short rate return of premium calculated at pro rata less 10%.  However if a reduced premium has been charged in consideration of a period of lay up or an earned premium in respect of an agreed extended voyage, the return premium will be calculated based upon the actual activity of the scheduled vessel, and then pro rata or short rate applied.  Cancellations due to sale of the scheduled vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by you.  All policy fees are deemed earned at the inception of the policy.

f)  If you sell or pledge the Scheduled Vessel or otherwise transfer ownership in part or in full, or give up possession of the Scheduled Vessel, whether actual or otherwise, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

g)  In the event of an actual and/or constructive and/or compromised total loss under this insuring agreement the annual premium is deemed fully earned by us.

h)  If you have used a broker to effect coverage, it is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

i)  We need not accept or pay for any property abandoned by you.  At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

j)  It is warranted that covered persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel. We shall not be deemed to provide cover or shall we be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us to any sanction, prohibition

or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

k)    If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order.  This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

l)    If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying us the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

m)    This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

n)    We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance (other than to the extent provided for under extension of Section B Limited Pollution Coverage) iii) war declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these iv) capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

o)    If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us or acceptance of any claim as may be covered hereunder.

p)    If any covered person has other insurance against risks covered by this insuring agreement, then this insurance shall be in excess over all other valid and collectible insurances.

q)    Unless we specifically agree in writing, and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

r)    Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement.  If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either.

      1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim

      Or,

      2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

s)    No suit or action on this Insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this insuring agreement is issued, then, and in that event, no suit or action

under this Insuring agreement shall be sustainable unless commenced within the shortest limitations permitted under the laws of such State.

t)   Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

u)   Where a lay-up 'laid up period' has been specified within the declaration page, it is warranted that the Scheduled Vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified.  'Use' includes, but is not restricted to, living on board the Scheduled Vessel.

v)   The Scheduled Vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the  basis of depreciated cash value less the applicable deductible .Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows;

  i)     Internal and/or external paints, finishes, gelcoat or other covering - 10% per annum.
  ii)    Bottom paint including but not limited to anti-foul or barrier coat finishes- 50% per annum.
  iii)   Sails, standing and running rigging - 12.5% per annum.
  iv)    Internal and/or external protective covers, canvas, vinyl and other materials and their frames – 20% per annum.
  v)     Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs - 10% per annum.
  vi)    Machinery including but not limited to engines, generators, water makers and waste systems - 7% per annum.
  vii)   Outboard Motors - 20% per annum.
  viii)  Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers - 20% per annum.
  ix)    Batteries and solar charging panels - 20% per annum.
  x)     Electrical equipment including but not limited to internal and external appliances, navigational aids, depth sounders, winches, pump motors and electric deck gear  - 10% per annum.
  xi)    Mast and spars – 5% per annum.
  xii)   Stanchions and lifelines – 10% per annum.
  xiii)  Inflatable tenders, dinghies or life rafts – 12.5% per annum.
  xiv)   Harp FRP, composites, aluminium or wood tenders, dinghies or life rafts – 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciated value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible.

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

w)   We have the right to either pay you the reasonable costs of repairs of your vessel or we will declare your vessel a constructive total loss.  Where we have paid the agreed value of your vessel to you as a result of our declaring the Scheduled Vessel a constructive total loss, you will, at our request, transfer title to the Scheduled Vessel either to us or to our designated or named nominee. We will provide you with the option to retain title to the Scheduled Vessel should you match or better the highest bid to purchase the

vessel that we receive.  We may offset any claim payment due to you against such sum due should you retain title to the Scheduled Vessel in accordance with the above.

x)  It is warranted that the Scheduled Vessel will be operated only by covered persons. However, in the event of an incident occurring when the vessel is being operated by any person other than a covered person that may give rise to a claim under this insurance, you have a period of seven days following such an incident to submit details of the operator for retroactive approval by underwriters, such approval not to be unreasonably withheld.

y)  Where you are entitled to limit your liability to third parties the maximum recoverable under Section 4 Coverage B, third party liability herein, is the amount you become legally liable to pay or the limit of coverage shown under Section B of the insuring agreement declaration page, whichever is the lesser amount.

z)  Where two or more insurers subscribe to this insurance their obligations are several and not joint and are limited solely to the extent of their individual subscriptions. The insurers in such circumstances are not responsible for the subscription of any co subscribing insurer who for any reason does not satisfy all or part of its obligations hereunder.

## 10. Your Duties In The Event Of A Loss

1)  Immediately take all possible steps to minimise the loss and protect the Scheduled Vessel from further loss.  Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2)  Within 30 days of a loss giving rise to any claim hereunder give us written notification of the loss and its circumstances, this term is a condition precedent to our liability hereunder.

3)  Comply with any reasonable request made of you, by us with regard to the loss.

4)  Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5)  Give us an opportunity to examine the damaged property before it is repaired or discarded.

6)  Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7)  Neither assume obligation, nor admit liability without our written permission to do so.

8)  Immediately forward to us any legal papers or notices received in connection with the loss.

9)  Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request.

10)  Allow examination by physicians of our choice.

11)  Assist us in obtaining copies of medical records and reports.

12)  Give us a notarised statement or statutory declaration if we so request.

13)  Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14)     Preserve any right of recovery from others. When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses.  You must also co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

## 11. Service of Suit, Choice of Law And Forum

**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America , in particular,  the Federal District court within which you the Assured resides or the Federal District court within which your insurance agent resides.

It is further agreed that:

a)      the Assured may serve process upon any senior partner in the firm of:

Mendes & Mount, LLP
750 7th Avenue
New York, NY 10019

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b)      The above named are authorised and directed to accept service of process on behalf of Underwriters in all such suits and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriter's behalf in the event such a suit shall be instituted.

c)      Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

This wording is the property of Concept Special Risks Ltd and may not be reproduced wholly or in part by any means whatsoever without the express written permission of Concept Special Risks Ltd.  Concept Special Risks Ltd will seek legal redress from any person or persons found to have infringed their copyright.