IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREAT LAKES INSURANCE SE | : | CIVIL ACTION |
| | : | NO. 19-04466 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RAIDERS RETREAT REALTY CO., LLC, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    February 22, 2021

## I.    INTRODUCTION

This is an insurance coverage case under maritime law. The
case involves a marine insurance policy issued by Plaintiff
Great Lakes Insurance SE ("GLI") affording hull coverage for a
vessel owned by Defendant Raiders Retreat Realty Co., LLC
("Raiders"). The vessel ran aground, suffering substantial
damage. Raiders filed a claim for coverage, which GLI denied. In
the instant action, GLI seeks a declaratory judgment that the
policy affords no coverage due to Raiders' alleged
misrepresentations and breach of an express warranty.

In turn, Raiders asserts counterclaims against GLI for: (I)
breach of contract, (II) breach of implied covenant of good
faith and fair dealing, (III) breach of fiduciary duty, (IV) bad
faith liability, in violation of 42 Pa. Cons. Stat. § 8371, and

(V) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law.

GLI filed an Answer to the counterclaims and now moves for judgment on the pleadings with respect to Counts III, IV, and V of the counterclaims. GLI contends that the policy contains a choice—of-law provision designating federal maritime law and, in its absence, New York law as the applicable law of the case. Raiders contends that the choice-of-law provision here is unenforceable and that therefore Pennsylvania law, the law of the forum in which the suit is pending, applies. This question is outcome determinative with respect to Counts III, IV, and V of the counterclaims.

Because the parties' contractual choice-of-law provision bars the counterclaims at issue, the Court will grant GLI's Motion for Judgment on the Pleadings as to Counts III, IV, and V of the counterclaims.

## II.  BACKGROUND[1]

From 2007 to 2019, GLI insured a vessel owned by Raiders. As part of the 2016-2017 policy renewal process, a third party conducted a survey of the vessel's condition. The survey stated

---

[1]     When reviewing a motion for judgment on the pleadings, the Court "view[s] the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II), 751 F.3d 150, 153 n.4 (3d Cir. 2014) (quoting Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008)).

the following under the heading "Findings & Recommendations":

Priority 1 recommendation:

\*Halon system, service and date tag.
\*Fire extinguishers, purchase and store aboard.

Compl. ¶ 13, ECF No. 1.

Raiders subsequently submitted a Letter of Survey Recommendations Compliance to GLI. The letter stated: "I certify, as owner of the above vessel, that all recommendations pertaining to the above vessel contained within the detailed survey submitted herein, have been complied with, other than those listed below along with the date of expected completion." Id. Ex. D. In a table below the text, Raiders wrote "N/A" in a column labeled "Outstanding Recommendation(s)." Id.

GLI renewed Raiders' coverage that year and in following years. The applicable policy contains the following provision in a section entitled "General Conditions & Warranties":

If the Scheduled Vessel is fitted with fire
extinguishing equipment, then it is warranted that
such equipment is properly installed and is maintained
in good working order. This includes the weighing of
tanks once a year, certification/tagging and
recharging as necessary.

Id. Ex. F.

In June of 2019, the vessel ran aground near Fort Lauderdale, Florida, and sustained significant damage. No fire occurred and, therefore, no fire equipment was needed or used. Raiders filed a claim with GLI for coverage of the loss.

3

GLI investigated the accident and determined that, at the time of the accident, the vessel's fire extinguishers had not been inspected or recertified. GLI therefore concluded that Raiders, contrary to its representations, had not completed the recommendations contained in the 2016 survey. Raiders disputes this conclusion and maintains that the vessel's fire extinguishers were fully functional and maintained in good operating order. Raiders also emphasizes that the damage to the vessel "was not caused by anything having to do with the fire extinguishers." Answer ¶ 24, ECF No. 5.

Based on the results of the investigation, GLI denied the claim on the grounds that Raiders violated the policy's express warranty concerning fire extinguishers, and that Raiders' 2016 letter contained a material misrepresentation. GLI brought the instant action, and Raiders filed the counterclaims presently before the Court. This memorandum disposes of three of the counterclaims (Counts III, IV, and V) and leaves to another day the issue of whether Raiders has asserted a valid claim under the policy.

## III.  LEGAL STANDARD

"After the pleadings are closed——but early enough not to delay trial——a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions are "designed to provide a means of disposing of cases when the material facts

4

are not in dispute between the parties and a judgment on the

merits can be achieved by focusing on the content of the

competing pleadings." 5C Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure § 1367 (3d ed. 2020). Such a

motion "may be employed by the defendant as a vehicle for

raising several of the defenses enumerated in Rule 12(b) after

the close of the pleadings." Id. When considering a Rule 12(c)

motion, the Court "must view the facts presented in the

pleadings and the inferences to be drawn therefrom in the light

most favorable to the nonmoving party." In re Fosamax

(Alendronate Sodium) Prods. Liab. Litig. (No. II), 751 F.3d 150,

153 n.4 (3d Cir. 2014) (quoting Rosenau v. Unifund Corp., 539

F.3d 218, 221 (3d Cir. 2008)).[2] Judgment on the pleadings is

available to a counterclaim defendant. See, e.g., Audiotext

Int'l, Ltd. v. Sprint Commc'ns Co., No. 03-CV-2110, 2006 WL

1490129 (E.D. Pa. May 26, 2006).

---

[2]     Choice-of-law issues present mixed questions of law and fact. See,
e.g., Toll v. Tannenbaum, 982 F. Supp. 2d 541, 548 (E.D. Pa. 2013) (Robreno,
J.) (explaining that "choice of law is a legal question for the court to
resolve, which, however, may require resolution of disputed facts," and that
a district court may hold a hearing at which "parties present[] evidence
regarding the factual disputes underlying the choice-of-law issue"), aff'd,
596 F. App'x 108 (3d Cir. 2014).
     Because the instant choice-of-law issue requires resolution of disputed
facts, the Court notified the parties in advance of the hearing on the Motion
that it would afford them an opportunity to present evidence on the issue of
which state's law applies. See Dec. 11, 2020, Order, ECF No. 34; Toll, 982 F.
Supp. 2d at 548.
     The Court then held a hearing pursuant to Federal Rule of Evidence 104
and ordered GLI to submit affidavits and any additional evidence regarding
its connections with New York, see Jan. 12, 2021, Order, ECF No. 42, which
the parties have done.

## IV.  DISCUSSION

"The appropriate choice-of-law rules to be applied is controlled by the basis for [a court's] federal jurisdiction, or power to adjudicate the [plaintiff's] claims." <u>Calhoun v. Yamaha Motor Corp., U.S.A.</u>, 216 F.3d 338, 343 (3d Cir. 2000) (citing <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 89 (1998)). "It is axiomatic that a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits." <u>Id.</u> (citing <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941)). But where a Court's jurisdiction is grounded in admiralty, federal choice-of-law principles apply. <u>See id.</u>

"[M]arine insurance contracts" fall "within the federal courts' maritime jurisdiction." <u>AGF Marine Aviation & Transp. v. Cassin</u>, 544 F.3d 255, 260 (3d Cir. 2008) (citing <u>New England Mut. Marine Ins. v. Dunham</u>, 78 U.S. 1 (1870)). Accordingly, federal choice-of-law principles govern the instant action.

GLI argues Counts III, IV, and V of the counterclaims are barred by the insurance policy's choice-of-law provision. That provision states:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

Compl. Ex. F, ECF No. 1.

GLI argues it is entitled to judgment on the pleadings with respect to counterclaim Counts IV (bad faith liability) and V (unfair trade practices) because the causes of action arise under Pennsylvania statutes and therefore contravene the policy's choice-of-law provision, which designates New York law as the jurisdiction that supplies the rule of decision in the absence of applicable federal maritime law. It argues it is entitled to judgment on the pleadings with respect to counterclaim Count III (breach of fiduciary duty) because federal admiralty law is silent on the cause of action and New York law does not recognize a cause of action for breach of fiduciary duty arising out of the alleged breach of an insurance contract.

Raiders argues GLI waived application of the choice-of-law provision by failing to raise it as an affirmative defense in its Answer to the counterclaims. Raiders also argues that even if the choice-of-law clause applied, the provision is unenforceable and Pennsylvania law, the law of the forum where the case is pending, governs the dispute. The Court will address these arguments seriatim.

A.    **Waiver of Affirmative Defense**

Rule 8(c) of the Federal Rules of Civil Procedure requires

a party responding to a pleading to "affirmatively state any
avoidance or affirmative defense." Raiders argues GLI waived its
choice-of-law argument by failing to identify the argument in
its Answer as an affirmative defense.

This argument is unpersuasive, and courts that have
squarely addressed the issue have reached the opposite
conclusion. See, e.g., Wallace v. Nat'l R.R. Passenger Corp., 5
F. Supp. 3d 452, 476 (S.D.N.Y. 2014) ("Weeks asserts that a
choice of law clause is unenforceable if the party invoking the
clause fails to include choice of law allegations in its
pleadings. . . . But it does not cite any cases for that
proposition."); Coachmen Indus., Inc. v. Alt. Serv. Concepts
L.L.C., No. CIV.A. H-06-0892, 2008 WL 177715, at *2 (S.D. Tex.
Jan. 17, 2008) (["C]hoice-of-law is not an affirmative defense
and a party need only 'call the applicability of another state's
law to the court's attention in time to be properly
considered.'" (quoting Kucel v. Walter E. Heller & Co., 813 F.2d
67, 74 (5th Cir. 1987))).

The cases Raiders cites in support of this argument involve
ERISA preemption, a markedly different context. See, e.g.,
Kenepp v. Am. Edwards Labs., 859 F. Supp. 809, 815 (E.D. Pa.
1994). Moreover, Raiders points to no cases in which, under
circumstances similar to those in this case, courts have
concluded that failure to raise a choice-of-law clause as an

affirmative defense in an Answer constitutes a waiver.

GLI timely raised the choice-of-law issue by identifying it
in a motion filed only two weeks after it answered the
counterclaims. See Pl.'s Mot. Dismiss Countercls., ECF No. 8.
Contrary to Raiders' assertions, GLI did not waive the argument
by failing to raise it in its Answer.

### B.    Enforceability of the Choice-of-Law Provision

Next, Raiders argues the parties' contractual choice-of-law
provision is unenforceable and that Pennsylvania law should
apply.

"Under federal maritime choice of law rules, contractual
choice of law provisions are generally recognized as valid and
enforceable." Great Lakes Reinsurance (UK) PLC v. Durham
Auctions, Inc., 585 F.3d 236, 242 (5th Cir. 2009); see also
Cassin, 544 F.3d at 260 (resolving marine insurance dispute
pursuant to the contractual choice-of-law provision).

"A choice of law provision in a marine insurance contract
will be upheld in the absence of evidence that its enforcement
would be unreasonable or unjust." 2 Thomas J. Schoenbaum,
Admiralty & Mar. Law § 19:6 (6th ed. 2020); see also St. Paul
Fire & Marine Ins. Co. v. Bd. of Comm'rs of Port of New Orleans,
418 F. App'x 305, 309 (5th Cir. 2011) ("The parties' choice of
law clause in an admiralty case will govern 'unless the [chosen]
state has no substantial relationship to the parties or the

transaction or the state's law conflicts with the fundamental
purposes of maritime law.'" (alteration in original) (quoting
Stoot v. Fluor Drilling Servs., Inc., 851 F.2d 1514, 1517 (5th
Cir. 1988))); see also Neely v. Club Med Mgmt. Servs., Inc., 63
F.3d 166, 197 n.36 (3d Cir. 1995) (en banc) ("[A] freely-
bargained for, reasonable choice of law clause whose operation
does not contradict a strong public policy of the United States
. . . would typically be enforced under federal maritime law.").

Raiders argues that GLI does not have sufficient contacts
with New York and that, therefore, enforcing the choice-of-law
provision would be unreasonable and unjust. Upon review of the
parties' evidence, the Court finds that GLI has sufficient
contacts with New York, to wit: (1) it maintains an agent for
service of process in New York, (2) it maintains its trust
accounts in New York, and (3) it was admitted as a surplus lines
insurer in New York. Decl. of Beric Anthony Usher ¶¶ 11-13, ECF
No. 43.[3]

Multiple courts have found the same or very similar
contacts sufficient to enforce the choice-of-law clause at issue
here. See, e.g., Durham Auctions, 585 F.3d at 242; Great Lakes
Reinsurance (UK) PLC v. S. Marine Concepts Inc., No. CIV.A.G-07-
276, 2008 WL 6523861, at *2 (S.D. Tex. Oct. 21, 2008) ("Great

---

[3]     Raiders relies on Raiders' contacts with Pennsylvania, the forum. These
contacts are not relevant to the issue.

Lakes has offered evidence that it has substantial assets in and
connections to New York, including the presence of its agent for
service. This is enough to uphold the agreed-to choice of law
provision."); Great Lakes Reinsurance (UK), PLC v. Rosin, 757 F.
Supp. 2d 1244, 1251 (S.D. Fla. 2010) (collecting cases and
concluding that "New York has a sufficient substantial
relationship with Great Lakes to allow application of New York
law").

Raiders further argues that, notwithstanding GLI's contacts
with New York, enforcing the choice-of-law provision would also
be "unreasonable and unjust" because applying New York law would
frustrate "Pennsylvania's 'strong public policy' of punishing
insurers who deny coverage in bad faith." Def.'s Suppl. Memo 3,
ECF No. 35-1.

In support of this argument, Raiders points to the Supreme
Court's decision in The Bremen v. Zapata Off-Shore Co., 407 U.S.
1 (1972). The Bremen involved a choice-of-forum clause, not a
choice-of-law clause as in this case, in an admiralty suit. In
its analysis, the Supreme Court noted that "[a] contractual
choice-of-forum clause should be held unenforceable if
enforcement would contravene a strong public policy of the forum
in which suit is brought, whether declared by statute or by
judicial decision." Id. at 15.

Twenty years later, in Milanovich v. Costa Crociere,

S.p.A., 954 F.2d 763, 768 (D.C. Cir. 1992), the D.C. Circuit

applied The Bremen's choice-of-forum analysis to a choice-of-law

clause. Milanovich laid a rule that a contractual choice-of-law

provision in a maritime contract should be honored "unless the

party challenging the enforcement of the provision can establish

that 'enforcement would be unreasonable and unjust,' 'the clause

was invalid for such reasons as fraud or overreaching,' or

'enforcement would contravene a strong public policy of the

forum in which suit is brought.'" Id. (quoting The Bremen, 407

U.S. at 15) (emphasis added)).

Raiders points to the last prong of Milanovich's rule and

its progeny as standing for the proposition that this Court must

consider whether enforcing the choice-of-law clause at issue

would contravene a strong public policy of the forum state (in

this case, Pennsylvania). Some district courts in other circuits

have, under similar circumstances, followed this approach. See,

e.g., Great Lakes Reinsurance (UK) PLC v. Dion, No. 09 CV 1781

JM, 2009 WL 5174372, at *2 (S.D. Cal. Dec. 18, 2009) ("[T]he

parties have not identified any fundamental policy of either

California or admiralty law that conflicts with New York law. .

. . [T]herefore, the court finds that the choice of law

provision in the policy should be enforced, and New York Law

shall apply."); Great Lakes Reinsurance (UK), PLC v. Sea Cat I,

LLC, 653 F. Supp. 2d 1193, 1198 (W.D. Okla. 2009) (considering whether applying New York law would contravene Oklahoma public policy). The Fifth Circuit in Durham Auctions also applied this framework but declined to expressly endorse it. See 585 F.3d at 244 ("Durham argues that application of New York law would be contrary to fundamental policy of Mississippi. Assuming, arguendo, that this would be determinative, it has not been shown." (emphasis added)).

However, this Court is not persuaded that the Bremen framework is applicable to the instant action. In relying on Milanovich, Raiders asks the Court to interpret the term "forum" as a synonym for "state." This interpretation misapplies Milanovich. In Milanovich, the court addressed whether U.S. or Italian law should govern the parties' dispute, and it used the term "forum" to refer not to a particular state or jurisdiction, but to the United States as a whole. See 954 F.2d at 768; see also Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1296-97 (9th Cir. 1997) (holding that U.S. law, rather than Liberian law, governed the action).

The Ninth Circuit recognized this important distinction in Galilea, LLC v. AGCS Marine Insurance Co., 879 F.3d 1052 (9th Cir. 2018). Galilea involved a dispute about the scope of insurance coverage for a yacht owned by Montana residents. The choice-of-law provision in the insurance contract, which is

almost identical to the one in this case, provided that the

policy "shall be governed by . . . substantive United States

Federal Maritime Law, but where no such established and

entrenched principles and precedents exist, the policy shall be

governed [by] . . . the substantive laws of the State of New

York" and that all disputes arising under the policy "shall be

resolved exclusively by binding arbitration." Id. at 1055.

     The insured argued this provision was unenforceable under

The Bremen because it contravened the "strong public policy . .

. against enforcement of arbitration agreements" in Montana, the

state in which they filed suit. The Ninth Circuit disagreed,

noting that "The Bremen considered whether the public policy of

the forum where suit was brought——there, federal public policy as

supplied by federal maritime law——outweighed the application of

the law of other countries." Id. at 1060 (citing The Bremen, 407

U.S. at 17–18). The Ninth Circuit explained that under The

Bremen, "courts consider the application of the laws of

otherwise equally situated fora in light of the 'concerns of

international comity, respect for the capacities of foreign and

transnational tribunals, and sensitivity to the need of the

international commercial system for predictability.'" Id.

(quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,

Inc., 473 U.S. 614, 629 (1985)). In contrast, the dispute before

the court in Galilea involved an "unequal, hierarchical

relationship between federal maritime law and state law." Id.
The court therefore concluded that the insured's reliance on
Montana law was misplaced, as "[w]ithin federal admiralty
jurisdiction, conflicting state policy cannot override squarely
applicable federal maritime law." Id.

Here, the Court concludes that the public policy of a state
where a case was filed cannot override the presumptive validity,
under federal maritime choice-of-law principles, of a provision
in a marine insurance contract where the chosen forum has a
substantial relationship to the parties or the transaction. See
Stoot v. Fluor Drilling Servs., Inc., 851 F.2d 1514, 1517 (5th
Cir. 1988)); see supra Section IV.B (concluding, as many other
courts have, that GLI has sufficient contacts with New York).
The issue is not, as Raiders contends, whether New York law
conflicts with Pennsylvania public policy; the issue is whether
the well-established principle that choice-of-law provisions in
maritime contracts are presumptively valid must yield to the
public policy preferences of the particular state in which the
case happens to have been brought.

The Court's conclusion is consistent with maritime law's
primary purpose: "to protect and encourage commercial maritime
activity." Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs &
Rafts of Logs, 709 F.3d 1055, 1061 (11th Cir. 2013) (citing
Sisson v. Ruby, 497 U.S. 358, 367 (1990)). "This body

15

of law serves to protect commercial activity by ensuring

that uniform rules of conduct are in place." Id. (citing Exec.

Jet Aviation, Inc. v. Cleveland, 409 U.S. 249, 269–70 (1972)).

Permitting state public policy to override presumptively valid

contractual choice-of-law provisions in marine insurance

contracts would frustrate such uniformity and, with it, the

central purpose of maritime law.

       For the foregoing reasons, the parties' contractual choice-

of-law provision is valid and enforceable.[4]

---

4       Raiders' remaining arguments about the instant choice-of-law analysis
are also unavailing.
       First, Raiders argues the Court must apply the multi-factor test
articulated in Lauritzen v. Larsen, 345 U.S. 571, 582 (1953), for resolving
conflicts of law in maritime disputes. See Def.'s Memo. Contra Pl.'s Rule
12(c) Mot. 13-14, ECF No. 20-1. However, the Lauritzen analysis applies only
in the absence of a contractual choice-of-law provision. See 1 Thomas J.
Schoenbaum, Admiralty & Mar. Law § 5:19 (6th ed. 2020) ("Where application
or choice of law issues are not decided by agreement of the parties or by
statute, admiralty applies a general choice of law analysis derived from
three Supreme Court cases, [including] Lauritzen v. Larsen."); Calhoun v.
Yamaha Motor Corp., U.S.A., 216 F.3d 338, 343 (3d Cir. 2000) (applying
Lauritzen in the absence of a contractual choice-of-law provision). Here,
because the contract at issue contains a choice-of-law provision, the
Lauritzen analysis is inapposite.
       Second, Raiders argues New York law conflicts with the federal maritime
doctrine of uberrimae fidei, or "utmost good faith," and therefore should not
apply to Raiders' bad faith claim. Raiders first raised this argument in a
Reply after the parties had filed multiple briefs on the instant Motion and,
in contravention of this Court's policies and procedures, Raiders did not
seek leave to file the Reply. See Def.'s Reply 8, ECF No. 38. Accordingly,
the Court will not consider this argument.
       Finally, on February 18, 2021, Raiders filed yet another brief after
the court held a hearing and without leave of court raising not previously
raised arguments as to whether GLI has substantial contacts with New York.
See Def.'s Reply to Pl.'s Opp'n, ECF No. 50. This latest submission also will
be disregarded as having been filed without leave of Court.

16

C.     **Effect on Counterclaims**

Raiders concedes,[5] and the Court agrees, that the three counterclaims at issue are not cognizable under New York law. Counts IV and V allege violations of Pennsylvania statutes, and New York law does not recognize a cause of action for breach of fiduciary duty (Count III) arising out of the alleged breach of an insurance contract. See Batas v. Prudential Ins. Co. of Am., 724 N.Y.S.2d 3, 7 (N.Y. App. Div. 2001) ("No special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer." (citing New York Jurisprudence (Insurance) § 651 (2d ed.))).

Given that New York law applies, GLI is entitled to judgment on the pleadings with respect to the counterclaims at issue.

V.     **CONCLUSION**

For the foregoing reasons, the Court will grant GLI's Motion for Judgment on the Pleadings. An appropriate order follows.

---

[5]     The Court notes that Raiders appears to have changed its position as to whether the breach of fiduciary duty claim is cognizable under New York law. In its briefing, Raiders argued that the doctrine of uberrimae fidei "creates a fiduciary relationship between the insurance company and the insured" that "is sufficient to maintain a claim for breach of fiduciary duty." See Def.'s Memo. Contra Pl.'s Rule 12(c) Mot. 20, ECF No. 20-1. At oral argument, however, Raiders took the position that none of the three counterclaims at issue is cognizable under New York law. See Tr. 30:15-25, ECF No. 40.