## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GREAT LAKES INSURANCE SE**<br><br>**Plaintiff / Counterclaim Defendant**<br><br>**v.**<br><br>**RAIDERS RETREAT REALTY CO, LLC,**<br><br>**Defendant / Counterclaim Plaintiff** | **CIV. NO. 2:19-cv-04466-ER** |

## DEFENDANT RAIDERS RETREAT REALTY CO., LLC'S
## STATUS REPORT

Defendant, RAIDERS RETREAT REALTY CO, LLC ("Defendant" or "Raiders"), by and through its attorneys, Goldstein Law Partners, LLC, hereby submits the following status report "advising the Court how to proceed in light of the Third Circuit Court of Appeals' judgment[.]"  *See* ECF No. 67 (Order, 10/14/22).  On February 22, 2021, this Court granted the Motion for Judgment on the Pleadings filed by Plaintiff, GREAT LAKES INSURANCE SE ("Plaintiff," "GLI" or "Great Lakes"), which dismissed the extracontractual causes of action contained in Raiders' Counterclaim at Counts III, IV and V.  *See* ECF. No. 52 (Order, 2/22/21); ECF No. 55 (Order, 3/15/21) (denying Raiders' Motion for Reconsideration).  Raiders appealed this Court's orders on March 23, 2021, pursuant to 28 U.S.C. § 1292(a)(3).

The Third Circuit rendered a decision on August 30, 2022, and vacated the judgments entered by this Court on February 22, 2021 and on March 15, 2021.  *See Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 47 F.4th 225 (3d Cir. 2022).  After

thorough analysis of the issues presented on the appeal, the Third Circuit held that the framework set forth in *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972), "extends to the choice-of-law provision" contained in the parties' maritime insurance policy. *Id*. at 233. In remanding this matter for further proceedings consistent with this holding, the Third Circuit directs this Court "to consider whether Pennsylvania ha[s] a strong public policy that would be thwarted by applying New York law." *Id*.

## I.  PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

Great Lakes filed a Declaratory Judgment Action in the Eastern District of Pennsylvania against Raiders on September 25, 2019, seeking (i) to establish that Raiders committed a material breach of the marine insurance policy issued, and (ii) to vindicate the insurer's decision to deny coverage. ECF No. 1 (Compl., 9/25/2019). Raiders responded with an Answer, Affirmative Defenses and Counterclaims. ECF No. 5 (Raiders Answer & Counterclaims, 12/6/2019). Specifically, Raiders alleged the following causes of action against Great Lakes: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) bad faith liability under 42 Pa. C.S.A. § 8371; and (5) Violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. On January 9, 2020, Great Lakes filed an Answer to Raiders' Counterclaims. ECF No. 6 (Great Lakes Answer, 1/9/2020).

On March 3, 2020, Great Lakes filed a Motion for Judgment on the Pleadings, targeting Counts III, IV and V of Raiders' Counterclaim. ECF No. 19 (GLI's Motion for Judgment on the Pleadings, 3/19/2020). Raiders filed a Response and Memorandum of

Law in Opposition to Great Lakes' Motion under Rule 12(c). ECF No. 20 (Raiders' Opposition, 3/13/2020). The parties sought leave to file a reply brief and a sur-reply brief, respectively. ECF Nos. 22, 23.

This Court scheduled oral argument on January 7, 2021, regarding Plaintiff's Motion for Judgment on the Pleadings. *See* ECF No. 34 (Order, 12/11/2020). Following oral argument, at this Court's direction, Raiders and Great Lakes submitted additional filings, including memoranda and affidavits concerning whether Great Lakes maintained a substantial connection with the State of New York. *See* ECF No. 43 (Great Lakes Memorandum and Affidavits, 1/22/2021); ECF No. 44 (Raiders' Memorandum and Affidavits, 2/1/2021).

On February 22, 2021, this Court entered an Order and Memorandum Decision that, *inter alia*, dismissed with prejudice Counts III, IV and V from Raiders' Counterclaims. ECF No. 52 (Order, 2/22/2021); ECF No. 51 (Memorandum Decision, 2/22/2021). On March 8, 2021, Raiders filed a Motion for Reconsideration, asking this Court to alter or amend the February Order. *See* Fed. R. Civ. P. 59(e); L.R. 7.1(g). The Court promptly dismissed Raiders' Motion. (Order, 3/15/21).

This Court instructed the parties "[to] file any Motions for Summary Judgment by March 22, 2021[,]" with "[r]esponses to any Motions for Summary Judgment [to] be filed by April 21, 2021. *See* ECF No. 52 (Order, 2/22/2021). Accordingly, both parties filed Motions for Summary Judgment (together with responses in opposition) in accord with the delineated schedule.

Pursuant to 28 U.S.C. § 1292(a)(3), on March 23, 2021, Raiders appealed this Court's orders, which dismissed its extracontractual counterclaims. This Court stayed all proceedings, including the disposition of the parties' Motions for Summary Judgment, pending the outcome of Raiders' appeal.

A.   *The Third Circuit's Decision to Vacate and Remand.*

The Third Circuit vacated this Court's dismissal of Counts III, IV and V of Raiders' counterclaim, "hold[ing] that *The Bremen*'s framework extends to the choice-of-law provision at issue here" – that is, this Court "needed to consider whether Pennsylvania has a strong public policy that would be thwarted by applying New York law." *Raiders Retreat*, 47 F.4th at 233.[1]  In rendering this decision, the Third Circuit explained that *The Bremen*'s holding (1) "applies equally" to "choice-of-law provisions … [and] to those provisions selecting a forum[;]" and (2) extends to disputes concerning which of two competing states are the appropriate forum, not "confin[ed] … only to disputes between international fora and U.S. law[.]" *Id.* at 231-233.

The Third Circuit acknowledged that *The Bremen* concerned the enforceability of a forum selection clause – not a choice-of-law provision – in a maritime towing contract between an American company and a German company. *Id.* at 230.  In *The Bremen*, the U.S. Supreme Court ruled that the forum selection provision "was facially valid" and "should be enforced absent a 'strong showing' that '**enforcement would be unreasonable and unjust**, or that the clause [is] invalid for such reasons as fraud or overreaching.' "  *Id.* (quoting *The Bremen*, 407 U.S. at 15) (emphasis added).  The Third

---

[1] The Third Circuit independently determined that appellate jurisdiction was proper pursuant to 28 U.S.C. § 1292(a)(3).

Circuit explained that *The Bremen* Court "then provided examples of circumstances where enforcement of a choice-of-forum provision would be 'unreasonable and unjust[.]' " *Id.* Specifically, these examples offered by *The Bremen* Court included

> situations where enforcement would "*contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.*"

*Id.* (quoting *The Bremen*, 407 U.S. at 15) (emphasis added by Third Circuit).

Citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588 (1991), the Third Circuit found it significant that the Supreme Court applied *The Bremen*'s holding beyond disputes between two divergent international fora. *Id.* at 230-231. "[T]he Supreme Court extended *The Bremen*'s framework to a dispute over which of two competing states was the proper forum for a tort action in admiralty[,]" the Third Circuit observed. Slip. *Id.* Thus, the "forum" identified in *The Bremen*'s framework may, indeed, refer to the **state** "forum in which suit is brought[,]" as *Carnival Cruise* "applied *The Bremen* to a dispute over whether Washington State or Florida was the proper forum to decide." *Id.* at 230-231, 233.

In issuing this holding, the Third Circuit addressed and rejected the primary arguments advanced by Great Lakes. On appeal and before this Court, Great Lakes strongly maintained, "*The Bremen* 'is utterly irrelevant because it had absolutely nothing to do with the enforcement of choice of *law* clauses." *Id.* at 231 (quoting GLI's Brief). Contrary to GLI's continued insistence otherwise, the Third Circuit emphasized that the decision in *The Bremen* did not merely determine the enforceability of the parties' choice of forum provision. *Id.* at 231-232. Rather, as the Third Circuit observed, the forum

clause in *The Bremen* also established the substantive law to be applied in the dispute. *Id.* at 231.  *The Bremen* Court "conclude[d] that the forum clause was also an effort to obtain certainty as to the applicable substantive law,' as 'it is the general rule in English courts that the parties are assumed, absent contrary indication, to have designated the forum with the view that it should apply its own law.' "  *Id.* (quoting *The Bremen*, 407 U.S. at 13 n.15.).  Thus, in *The Bremen*, the forum clause selected both the London Court of Justice as the forum location *and* English substantive law as the choice of law.  The Third Circuit recognized that the Supreme Court was aware of this fact when fashioning the analytical framework in *The Bremen*.

The Third Circuit further noted that other U.S. Courts of Appeal employ *The Bremen* framework in assessing the enforceability of choice-of-law clauses in maritime contracts.  *Id.* at 231-232.  In particular, the Third Circuit cited the D.C. Circuit's decision in *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 767 n.7 (D.C. Cir. 1992), which "extend[ed] *The Bremen*'s framework to the choice of law in a cruise ticket[.]"  *Id.* at 231.

Great Lakes also argued against the application of *The Bremen* framework in the instant case based upon the Supreme Court's holding in *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310 (1955).  According to Great Lakes, because "choice of law clauses in policies of marine insurance are presumptively valid and enforceable [under federal admiralty law,]" courts must apply this federal rule "no matter what."  *Raiders Retreat*, 47 F.4th at 232 (quoting GLI's Brief).  In other words, "the public policy of Pennsylvania could not overcome 'the well-established principle that choice-of-law provisions in maritime contracts are presumptively valid.' "  *Id.* (quoting District Court

Op., at 21).  The Third Circuit rejected this argument, acknowledging that Raiders had not advocated for displacing a controlling rule of federal admiralty law on the basis of Pennsylvania's strong public policy.  *See id*. at 232-233.

The Third Circuit explained that *The Bremen* framework "is *not* altogether separate" from the rule presumptively enforcing choice-of-law provisions in maritime contracts.  *Id*. at 233.  In fact, it held that the two rules equate to the same framework and analysis.  *Id*.  *The Bremen* simply provides courts with guidance in determining *when* – under what circumstances – the presumptive validity is rebutted.  *Id*.

> Indeed, the rule that choice-of-law provisions in maritime insurance contracts are presumed enforceable unless "enforcement would be unreasonable or unjust," Schoenbaum, *supra*, § 19:6, is identical to *The Bremen*'s rule that forum-selection provisions should be honored unless "enforcement would be unreasonable and unjust," 407 U.S. at 15. Given this overlap—coupled with *The Bremen*'s "strong public policy" exception comprising but one part of the holding's broader "unreasonable and unjust" standard—**we consider it altogether reasonable that a "strong public policy of the forum [state] in which suit is brought" could, as to that policy specifically, render unenforceable the choice of state law in a marine insurance contract**. *See id*.

*Id*. (emphasis added).

Both this Court and Great Lakes replied upon the Ninth Circuit's decision in *Galilea, LLC v. AGCS Marine Insurance Co.*, 879 F.3d 1052 (9th Cir. 2018), in reaching the opposite conclusion.  In distinguishing *Galilea*, the Third Circuit explained that, unlike the circumstances confronted by the Ninth Circuit, the choice in the instant case is *not* a conflict between (a) state policy and (b) "squarely applicable federal maritime law." *Raiders Retreat*, 47 F.4th at 232-233.  The Ninth Circuit in *Galilea* first determined, "there [was] no gap in federal maritime law to fill with law from *any* state … as the FAA

[Federal Arbitration Act] supplie[d] the governing arbitration law for maritime transactions." *Id.* at 232 (quoting *Galilea*, 879 F.3d at 1060; emphasis in original). The plaintiffs in *Galilea* sought to displace a governing rule of federal admiralty law based on state policy – a Montana policy purportedly opposed to arbitration. *Id.* Conversely, the choice of law question here concerns which *state's* law should apply interstitially. Specifically, the Third Circuit articulated the question in the instant case as follows: whether a " 'strong public policy of the forum [state] in which suit is brought' could, as to that policy specifically, render unenforceable **the choice of state law** in a marine insurance contract." *Id.* at 233 (emphasis added). The Third Circuit answered this question in the affirmative.

II.    <u>PROCEEDINGS ON REMAND</u>

A.    *This Court Must Decide whether Applying New York Law would Contravene a <u>"Strong Public Policy" in Pennsylvania.</u>*

The primary question before this Court on remand is whether enforcing the Choice-of-Law Provision in the parties' marine insurance policy, which applies New York law interstitially, "would '*contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.*' " *Raiders Retreat*, 47 F.4th at 230 (quoting *The Bremen*, 407 U.S. at 15) (emphasis added by Third Circuit). Great Lakes initiated this action in the Eastern District of Pennsylvania and, as such, Pennsylvania is the "*forum* [state] *in which suit is brought*" for purposes of *The Bremen* framework. *See id.* at 230-231, 233 (citing *Carnival Cruise*, 499 U.S. at 588). Accordingly, this Court must now decide "whether Pennsylvania has a strong public policy that would be thwarted by applying New York law." *Id.* at 233. Raiders maintains that this Court should

answer this inquiry in the affirmative, and deny all attempts by Great Lakes to dismiss Counts III, IV and V of Raiders' Counterclaim based upon the Choice-of-Law Provision.

Counts IV and V of Raiders' Counterclaim are private causes of action created by Pennsylvania statutory law, which the General Assembly enacted to protect consumers from business practices like those in which Great Lakes allegedly engages.  *See* 42 Pa. C.S.A. § 8371 (private cause of action creating separate liability for bad faith insurance denials); Unfair Trade Practices and Consumer Protection Law (UTPCP), 73 P.S. §201-1 *et seq.*  These claims would be proscribed if the Choice-of-Law Provision in the parties' marine insurance policy were enforced, as neither cause of action is cognizable under New York law.

As noted above, the parties extensively briefed their positions relating to Great Lakes' Motion for Judgment on the Pleadings under Rule 12(c).  The briefing, however, focused almost exclusively on the question of whether *The Bremen*'s framework applied in determining the enforceability of the Choice-of-Law Provision in the parties' marine insurance policy.  The briefing did not fully address the issue before this Court on remand – whether enforcing the Choice-of-Law Provision to apply New York law would contravene a strong public policy in Pennsylvania.  Raiders, therefore, requests that this Court issue a briefing schedule on this question.

Raiders maintains that the answer to the pending inquiry is straightforward – that, Pennsylvania's strong public policy, as evidenced by both legislative enactments and judicial decisions, precludes enforcement of the Choice-of-Law Provision with

respect to Counts III, IV and V of the Counterclaim.  During oral argument before the

Third Circuit, Counsel for Great Lakes essentially conceded this point.

> JUDGE AMBRO:  And the optics, you know, don't appear great when you say an insurance company is denying coverage because of something that purportedly wasn't certified to that didn't cause the collision, didn't cause the damage.  And you -- you can see how this would cause someone some concern.

> MR. GOLDMAN:  Absolutely, Your Honor, and I have no doubt that Pennsylvania has a -- I -- I -- *I'm sure if we were to go to the Pennsylvania Supreme Court, I'll concede for purposes of the argument today, Pennsylvania would say we feel very strongly about this policy, that our insureds should be protected by Pennsylvania law.*  But the answer would still have to go back to Wilburn Boat, and, frankly, the supremacy clause, which Wilburn Boat said is the issue.

Arg. Tr., 6/8/22, at 28: 6-22 (emphasis added).  Counsel for Great Lakes made this

concession in the context of arguing that *Wilburn Boat* precluded any consideration as to

the strength of Pennsylvania's public policy – an argument the Third Circuit rejected.[2]

In particular, the history of the General Assembly's enactment of 42 Pa. C.S.A. §

8371 establishes the legislature's strong policy motive in creating a private cause of

action for bad faith denials of insurance coverage.  *See e.g.*, *Younis Bros. & Co. v. Cigna

Worldwide Ins. Co.*, 882 F. Supp. 1468, 1470–71 (E.D. Pa. 1994) (discussing the

circumstances of the General Assembly's enactment of § 8371).  In *D'Ambrosio v.

Pennsylvania National Mutual Casualty Ins. Co.*, 431 A.2d 966 (Pa. 1981), the Pennsylvania

---

[2] The Third Circuit recognized the following as an entrenched rule of federal admiralty law: "[a] choice of law provision in a marine insurance contract will be upheld in the absence of evidence that its enforcement would be unreasonable or unjust."  *Raiders Retreat*, 47 F.4th at 230 (citations omitted). Throughout this case, Great Lakes has treated this rule as though presumptive validity equated to *per se* validity – disregarding the qualifying language that enforcement of the provision cannot be "unreasonable or unjust."  The Third Circuit explained that *The Bremen* framework "is identical" to this rule upon which Great Lakes relies – "with *The Bremen*'s 'strong public policy' exception comprising but one part of the holding's broader 'unreasonable and unjust' standard."  *Id.* at 233.  In other words, *The Bremen* framework is a more detailed and expansive recitation of the long-standing rule for assessing the validity of choice-of-law provisions under federal admiralty law.

Supreme Court declined to recognize a private common law right of action for bad faith insurance denials. *Id*. at 970. "[I]t is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers[,]" the *D'Ambrosio* Court explained. *Id*. Only the General Assembly can determine whether imposing additional sanctions and remedies for insurance bad faith "are required to deter conduct which is less than scrupulous." *Id*.

In 1990, the Pennsylvania General Assembly enacted 42 Pa. C.S.A. § 8371, creating a statutory cause of action for bad faith denials of coverage. *See Younis Bros.*, 882 F. Supp. at 1471. The enactment of § 8371 "has been described as a 'delayed response' to [the *D'Ambrosio*] decision[.]" *Mishoe v. Erie Ins. Co.*, 824 A.2d 1153, 1160 (Pa. 2003) (citing *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 529 (3d Cir. 1997); *Nelson v. State Farm Mut. Auto. Ins. Co.*, 988 F.Supp. 527, 531–32 (E.D. Pa. 1997)). Thus, in the wake of a judicial decision that left Pennsylvania citizens without a private remedy, the General Assembly "[r]espond[ed] to the *D'Ambrosio* Court's invitation to create a right of action for bad faith," and "enacted Section 8371 in 1990." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 372 (Pa. 2017). This historical narrative establishes that § 8371 is the type of "strong public policy" that *The Bremen*'s framework was designed to protect.

Raiders requests the opportunity to develop this discussion further, as well as to explain the nature of the "strong public polic[ies]" under Counts III (breach of fiduciary duty) and V (UTPCP Law, 73 P.S. §201-1 *et seq.*).

B.      *This Court Should Reopen Fact Discovery and Provide Deadlines for Filing Dispositive Motions.*

To the extent that this Court ultimately determines "Pennsylvania has a strong public policy that would be thwarted by applying New York law[,]" and that this Court reinstates one or all of Raiders' extracontractual counterclaims, fact discovery should be reopened and the deadline extended by ninety (90) days (with an additional thirty (30) days for expert discovery). Although the parties have conducted some fact discovery concerning Great Lakes' denial of coverage and the parties' alleged contractual breaches, additional discovery is needed for Raiders' extracontractual counterclaims. Separate factual issues relate to Great Lakes' alleged (i) bad faith conduct, (ii) violation of the UTPCP law and (iii) breaches of fiduciary duty. Although there may be some overlap with existing claims, Raiders respectfully requests latitude to explore these additional claims – if some, or all, are now reinstated.

Furthermore, prior to the Third Circuit appeal, the parties filed Cross Motions for Summary Judgment. Those Motions remain pending. To the extent that this Court allows some or all of Raiders' extracontractual causes of action to move forward, Raiders requests that the current pending Motions for Summary Judgment be denied as moot without prejudice. As part of a new scheduling order, which includes new deadlines for fact and expert discovery, this Court should also include new deadlines for the parties to file dispositive motions.

## <u>CONCLUSION</u>

For all of the forgoing reasons, it is therefore respectfully submitted that this Court should enter an order as to the following:

(1)     Issue a briefing schedule to the parties in regard to "whether Pennsylvania ha[s] a strong public policy that would be thwarted by applying New York law[,]" *Raiders Retreat*, 47 F.4th at 233;

(2)     Reopen fact and expert discovery, thereby extending fact discovery by ninety (90) days and expert discovery by an additional thirty (30) days, to the extent some or all of the extracontractual causes of action at Counts III, IV and V of Raiders' Counterclaim are reinstated;

(3)     Deny, without prejudice, the parties' pending Motions for Summary Judgment as moot, and set a new deadline for dispositive motions.


                              Respectfully submitted,


                              GOLDSTEIN LAW PARTNERS, LLC

                              BY: */s/ Shawn M. Rodgers*
                              MICHAEL YANOFF, ESQUIRE
                              ID No. 19384
                              SHAWN M. RODGERS, ESQUIRE
                              ID No. 307598
                              610 Old York Road Suite 340
                              Jenkintown, PA 19046
                              (267) 627-2485
                              myanoff@goldsteinlp.com
                              srodgers@goldsteinlp.com

                              *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I, Shawn M. Rodgers, Esquire, do hereby certify that on October 28, 2022, I

served a true and correct copy of Defendant's Status Report, including all attachments,

upon the following by email and/or electronic filing CM/ECF:

George R. Zacharkow, Esquire          Michael I. Goldman, Esquire
1601 Market St Suite 3400             8751 W. Broward Blvd Suite 404
Philadelphia, PA 19103                Ft. Lauderdale, FL 33324


                                      */s/ Shawn M. Rodgers*
                                      SHAWN M. RODGERS, ESQUIRE