**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GREAT LAKES INSURANCE SE, : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | No. 19-4466 |
| : | |
| RAIDERS RETREAT REALTY CO., LLC, : | |
| Defendant. : | |

**July 15, 2024**                                                                                       **Anita B. Brody, J.**

### MEMORANDUM

On June 7, 2019, a 1988 70-ft Viking Motor Yacht vessel (the "Vessel") owned by Defendant Raiders Retreat Realty Co., LLC ("Raiders") ran aground and sustained significant damage. When Raiders filed a claim for coverage under its marine insurance policy (the "Policy") issued by Plaintiff Great Lakes Insurance SE ("GLI"), GLI denied the claim. GLI now seeks declaratory judgment that the Policy is void and affords no coverage due to Raiders' alleged misrepresentation (Count I) and breach of warranty (Count II). In turn, Raiders asserts various counterclaims against GLI. The parties now move for summary judgment. Because Raiders breached an express warranty, the Policy is void, and I will grant summary judgment for GLI and dismiss Raiders' counterclaims.

I.   **BACKGROUND**

From 2007 to 2019, GLI insured the Vessel owned by Raiders. Subject to its terms, conditions, warranties, and exclusions, the maritime insurance policy ("the Policy") afforded $550,000 in first-party property damage coverage for the Vessel. ECF No. 1, Ex. F. The Policy contains a choice-of-law provision stating:

1

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

ECF No. 1, Ex. F, Art. 11.

On October 18, 2016, as part of the 2016-2017 policy renewal process, a third party conducted a survey of the Vessel's condition.[1] The third party's survey ("2016 Survey"), evaluated, among other things, the Vessel's "Fire Fighting & Safety Gear." ECF No. 1, Ex. C ("2016 Survey") at 22–23. At that time, the Vessel had installed on board a Halon 1301 fire suppression system and several portable fire extinguishers. *Id*. at 22–23. For both the Halon 1301 system and the hand-held fire extinguishers, the 2016 Survey listed the "Inspection Date" as "Expired." *Id*. at 22, 23. Comments under the "Fire Fighting & Safety Gear" section stated that both the Halon 1301 system and the hand-held fire extinguishers required "service and date tag," that an annual "full maintenance check" should be made by a qualified fire extinguishing service facility in accordance with maintenance instructions, and that "[a] tag should be attached showing the date of such maintenance check." *Id*. at 23.

---

[1] Such a survey was contemplated under the parties' Policy. The Policy specifies that:
> Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either
> (1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim
> Or,
> (2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

ECF No. 1, Ex. F, Art. 9(r).

The conclusion of the 2016 Survey further specified two "Findings and Recommendations," as follows:

> Priority 1 recommendation:
> *Halon system, service and date tag.
> *Fire extinguishers, purchase and store aboard.

*Id*. at 26; ECF No. 1 ¶ 13.

Phillip Pulley ("Pulley"), the owner and sole member of Raiders Realty Co., LLC, subsequently submitted a Letter of Survey Recommendations Compliance to GLI on Raiders' behalf. ECF No. 58-3, Ex. C ("Compliance Letter"). The letter stated: "I certify, as owner of the above vessel, that all recommendations pertaining to the above vessel contained within the detailed survey submitted herein, have been complied with, other than those listed below along with the date of expected completion." *Id*. In a table below the text, Pulley wrote "N/A" in a column labeled "Outstanding Recommendation(s)." *Id*. Above the signature line, a "Warning" states: "Any misrepresentation in this letter of compliance may render insurance coverage null and void from inception." *Id*.; *see also* ECF No. 1, Ex. F, Art. 9(n) ("This contract is null and void in the event of nondisclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance.").

After receiving the Compliance Letter, GLI renewed Raiders' coverage that year and in following years. The Policy contains the following provision in a section entitled "General Conditions & Warranties":

> If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

ECF No. 1, Ex. F, Art. 9(k).

In June 2019, the vessel ran aground near Fort Lauderdale, Florida, and sustained significant damage. No fire occurred and, therefore, no fire equipment was needed or used. Raiders filed a claim with GLI for coverage of the loss.

GLI investigated the accident and determined that, at the time of the accident, the Vessel's fire extinguishing equipment had not been inspected or recertified. Specifically, tags on two of the hand-held fire extinguishers showed that they were last certified and tagged in May 2014, and the tags expired 12 months later, in May 2015. ECF No. 56, Ex. 4. Similarly, the tag on the Halon fire suppression system showed that it was last certified and tagged in May 2014, and the tag expired 12 months later, in May 2015. ECF No. 56, Ex. 5. Therefore, two fire extinguishers and the Halon system had not been certified and retagged in 2016, 2017, 2018, or at the time of the loss. *Id*.; ECF No. 56, Ex. 4, 5.

Based on the results of its investigation, GLI denied Raiders' claim on the grounds that Raiders violated the Policy's express warranty concerning fire extinguishing equipment, and that Raiders' Compliance Letter contained a material misrepresentation. *See* ECF No. 57-1 at 8. Raiders contends that the Vessel's fire extinguishers were fully functional and maintained in good operating order, and that it made no material misrepresentation.

## II. PROCEDURAL HISTORY

On September 25, 2019, GLI filed the instant suit seeking declaratory judgment that the Policy affords no coverage to Raiders. ECF No. 1. In response, Raiders asserts counterclaims against GLI for: (I) breach of contract, (II) breach of implied covenant of good faith and fair dealing, (III) breach of fiduciary duty, (IV) bad faith liability, in violation of 42 Pa. Cons. Stat. § 8371, and (V) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. ECF No. 5. The parties now move for summary judgment. ECF Nos. 56, 57.

In March 2020, GLI moved for judgment on the pleadings with respect to Counts III, IV, and V of Raiders' counterclaims. ECF No. 19. GLI contended that the policy's choice-of-law provision designating federal maritime law and, in its absence, New York law as the applicable law of the case required dismissing counterclaim Counts IV (bad faith liability) and V (unfair trade practices) because those causes of action arise under Pennsylvania statutes. Additionally, GLI argued that Count III (breach of fiduciary duty) should be dismissed because federal admiralty law is silent on that cause of action and New York law does not recognize a cause of action for breach of fiduciary duty arising out of the alleged breach of an insurance contract. Raiders—relying primarily on case law pertaining to forum selection clauses—contended that the choice-of-law provision is unenforceable because it would contravene a strong public policy of the forum in which suit is brought, and therefore Pennsylvania law should apply and its counterclaims should survive.

In February 2021, District Court Judge Robreno held that the choice-of-law provision bars Counts III, IV, and V of Raiders' counterclaims and granted GLI's Motion for Judgment on the Pleadings. ECF Nos. 51, 52; *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 521 F. Supp. 3d 580, 589 (E.D. Pa. 2021).

In August 2022, the Third Circuit vacated Judge Robreno's judgment. The Third Circuit recognized the presumptive validity and enforceability of choice-of-law provisions in maritime contracts, but held that presumption must yield to a strong public policy of the state where a suit is brought. The Third Circuit remanded for the district court to consider whether applying New York law would violate Pennsylvania's public policy regarding insurance. *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC,* 47 F.4th 225, 233 (3d Cir. 2022).

After the Third Circuit's decision, the Supreme Court granted certiorari to resolve a split in the Courts of Appeals regarding the enforceability of choice-of-law provisions in maritime contracts. *See Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC.*, 143 S. Ct. 999 (2023). In February 2024, the Supreme Court reversed the Third Circuit's decision and held that the choice-of-law provision in the parties' insurance policy is enforceable. *Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, LLC, 601 U.S. 65 (2024). The Court reasoned that "[w]hen a federal court decides a maritime case, it acts as a 'federal common law court, much as state courts do in state common-law cases,'" *id*. at 69 (quoting *Air & Liquid Systems Corp. v. DeVries*, 586 U.S. 446, 452 (2019)), and in exercising that authority, "federal courts follow previously 'established' maritime rules." *Id*. at 70 (citation omitted). "In the absence of an established rule, federal courts may create uniform maritime rules," and "[w]hen no established rule exists, and when the federal courts decline to create a new rule, federal courts apply state law." *Id*.

The Supreme Court held that there is an established federal maritime rule regarding the enforceability of choice-of-law provisions: "Choice-of-law provisions in maritime contracts are presumptively enforceable." 601 U.S. at 70. This rule is subject to narrow exceptions: courts can disregard "choice-of-law clauses in otherwise valid maritime contracts when the chosen law would contravene a controlling federal statute," or would "conflict with an established federal maritime policy," or "when parties can furnish no reasonable basis for the chosen jurisdiction." *Id*. at 76. The Court rejected Raiders' attempt to establish a new exception under which a state's strong public policy may justify disregarding a maritime choice-of-law clause. *Id*. at 78. Accordingly, the Court held that choice-of-law provisions in maritime contracts are presumptively enforceable, and none of the narrow exceptions to that presumption apply in this case.

### III. LEGAL STANDARD

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Furthermore, "the court is obliged to take account of the entire setting of the case on a Rule 56 motion." 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 2721 (4th ed. 2020); *see also Brown v. Borough of Mahaffey, Pa.*, 35 F.3d 846, 850 (3d. Cir. 1994) (directing the district court on remand to determine the issue "based on consideration of the entire record . . . .").

The summary judgment standard is the same for cross-motions as it is when only one party moves for summary judgment. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). When facing cross-motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Id.* (citations and internal quotation marks omitted). "Both motions must be denied if the court finds that there is a genuine dispute of material fact." 10A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2720. In short, the ultimate question at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

GLI moves for summary judgment on its declaratory judgment claims and on Raiders' counterclaim Count I (breach of contract). ECF No. 56. Raiders moves for summary judgment on the breach of warranty issue. ECF No. 57.

### A. Choice-of-Law

Following the Supreme Court's recent ruling, the choice-of-law provision in this case is enforceable. *Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, LLC, 601 U.S. 65 (2024). Therefore, this dispute between the parties must be "adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice," and in the absence of such well established admiralty law, New York law applies. ECF No. 1, Ex. F.

Raiders attempts to argue that the choice-of-law provision should be construed narrowly to only apply "New York law interstitially to the insurance policy itself, not to Raiders' three extra–contractual claims arising under Pennsylvania law." ECF No. 81 at 25–26. Raiders points to the First Circuit's decision in *Great Lakes Ins. SE v. Andersson*, 66 F.4th 20 (1st Cir. 2023), which involved an interpretation of the identical language in another GLI contractual choice-of-law clause. ECF No. 81 at 25–26. In *Andersson*, Defendant argued that the clause was ambiguous as to what law applied to Defendant's statutorily based counterclaim alleging unfair or deceptive practices. 66 F.4th at 21. The First Circuit agreed and construed that ambiguity against GLI as the drafter, and therefore held that the clause required the application of New York law only to the "insuring agreement," whereas the law of the forum state governed the extra-contractual claims at issue. *Id.* at 28. Following the logic of *Andersson*, Raiders argues that Pennsylvania law applies to Raiders' counterclaim Counts III, IV and V, and these extra-contractual causes of action should survive Great Lakes' Motion for Summary Judgment. ECF No. 81 at 26.

8

When Raiders previously sought to argue for this narrowed interpretation of the clause on appeal, the Third Circuit rejected it in a footnote because Raiders "failed to raise this argument in the District Court" and therefore "Raiders has not properly preserved this argument for our review." *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 47 F.4th 225, 230 n.1 (3d Cir. 2022), *cert. granted in part sub nom. Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC.*, 143 S. Ct. 999, (2023), and *rev'd*, 601 U.S. 65 (2024).

Accordingly, though Raiders seeks to raise this argument anew on remand, this argument has been waived. Third Circuit courts have "consistently rejected such attempts to litigate on remand issues that were not raised in a party's prior appeal and that were not explicitly or implicitly remanded for further proceedings." *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 203 (3d Cir. 2004); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 657 (3d Cir. 2007). As the Third Circuit explained in *Cowgill v. Raymark Industries, Inc.*, 832 F.2d 798 (3d Cir.1987),

> [a]dherence to the rule that a party waives a contention that could have been but was not raised on a prior appeal, *Munoz v. County of Imperial*, 667 F.2d 811, 817 (9th Cir.), *cert. denied*, 459 U.S. 825, 103 S.Ct. 58, 74 L.Ed.2d 62 (1982), is, of course, necessary to the orderly conduct of litigation. Failure to follow this rule would lead to the bizarre result, as stated admirably by Judge Friendly, "that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982).

*Cowgill*, 832 F.2d at 802 n. 2 (quoting *Laffey v. Northwest Airlines, Inc*., 740 F.2d 1071, 1089–90 (D.C.Cir.1984)) (alterations omitted).

Therefore, the choice-of-law provision applies to all of the pending claims between the parties.[2] Applying this provision, because Raiders' counterclaim Counts IV (bad faith liability)

---

[2] Other courts have likewise applied New York law to extracontractual claims based on identically-worded choice-of-law provisions. *See, e.g. Great Lakes Reinsurance (UK) PLC v. Tico Time Marine LLC*, 2011 WL 1044154 at *3-4 (S.D. Tex. Mar. 16, 2011) ("It does not make sense to interpret the phrase that calls for the application of New York law when there is no entrenched maritime precedent as applying only to

and V (unfair trade practices) allege violations of Pennsylvania statutes, these claims are not cognizable. *See Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 521 F. Supp. 3d 580, 589 (E.D. Pa. 2021), *vacated and remanded*, 47 F.4th 225 (3d Cir. 2022), *rev'd*, 601 U.S. 65 (2024). Similarly, federal admiralty law is silent on breach of fiduciary duty, as alleged in counterclaim Count III, and New York law does not recognize a cause of action for breach of fiduciary duty arising out of the alleged breach of an insurance contract. *Id*. Accordingly, Raiders' counterclaims Counts III, IV, and V are not cognizable and must be dismissed.

Additionally, Raiders' counterclaim Counts II (breach of the duty of good faith and fair dealing) cannot survive. Maritime law is silent on the question of whether a party may allege a breach of the duty of good faith and fair dealing as an independent cause of action where they have already brought a claim for breach of contract. *See, e.g., BVI Marine Constr. Ltd. v. ECS-Florida, LLC*, No. 12-80225-CIV, 2013 WL 6768646, at *6 (S.D. Fla. Dec. 20, 2013) ("[T]here appears to be no maritime rule with respect to this issue."). Therefore, the court looks to New York law, which "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co*., 310 F.3d 73, 81 (2d Cir. 2002). "'[I]f the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated.'"

---

the agreement and not to the disputes arising under the agreement, because such an interpretation would leave no alternative for this class of claims, even though the provision clearly intends (by using the phrase "but where no such well established, entrenched precedent exists") to establish an alternative choice of law if there is no entrenched maritime law."); *Openwater Safety IV, LLC v. Great Lakes Insurance SE*, 435 F.Supp.3d 1142 (D. Colo. 2020) (finding that New York law applied to all parties' claims and counterclaims which "ar[o]se from the Parties' performance under the insurance contract and subsequent coverage dispute.").

*MeehanCombs Global Credit Opportunities Funds, LP v. Caesars Entm't Corp.*, No. 14–CV–7091 (SAS), 80 F.Supp.3d 507, 514, 2015 WL 221055, at *4 (S.D.N.Y. Jan. 15, 2015); s*ee Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 572 (E.D.N.Y. 2015).

Here, Raiders' counterclaim Count I (breach of contract) is based on GLI's refusal to pay the amounts incurred in connection to Raiders' loss. ECF No. 5 ¶¶ 34–44. Raiders' counterclaim Count II (breach of implied covenant of good faith and fair dealing claim) is premised on GLI's alleged failure to "effectuate prompt, fair and equitable settlement of the claim submitted by Raiders" and GLI's alleged "unreasonable and arbitrary failure to abide by the terms of its Policy to insure the Vessel, and by failing to indemnify Raiders for the losses that it sustained." ECF No. 5 ¶¶ 47, 49. Accordingly, counterclaim Count II is not based on different facts or allegations than counterclaim Count I, and therefore Count II must be dismissed.

### B. Breach of Warranty

GLI seeks declaratory judgment that the Policy is void because Raiders breached an express warranty. ECF No. 1 ¶¶ 37–45 (Count II). Under the parties' Policy, because Raiders' Vessel was fitted with fire extinguishing equipment, Raiders warranted that "such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary." ECF No. 1, Ex. F, Art. 9(k). The Policy further states that, when GLI requests that a survey be conducted of a Vessel and that survey results in "any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder." *Id.*, Art. 9(r). The Policy specifies that, for any terms referred to as "warranties," a breach of that term "will void this policy from inception." *Id.*, Art. 9(t).

New York law controls the construction and application of the Policy and the fire extinguishing equipment warranty at issue, except to the extent federal admiralty law conflicts. *See Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 30 (2d Cir.1999) ("There is no specific federal rule governing construction of maritime insurance contracts.").

A "warranty" is a promise "by which the assured undertakes that some particular thing shall or shall not be done, or that some condition shall be fulfilled, or whereby he affirms or negatives the existence of a particular state of facts." Leslie J. Buglass, *Marine Insurance & General Average in the United States* 27 (2d ed.1981) (quoting Sect. 33(1) of the English Marine Insurance Act of 1906, a traditional source of shared Anglo–American maritime law). New York's Insurance Law defines a "warranty" as

> any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer's liability thereunder, the existence of a fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of any loss, damage, or injury within the coverage of the contract.

N.Y. Ins. L. § 3106(a). As a general matter, warranties represent a promise by the insured to do or not to do some thing that the insurer considers significant to its risk of liability under an insurance contract.

In all areas of insurance other than maritime insurance, an insured's breach of warranty does not "avoid an insurance contract or defeat recovery thereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract." *Id.* § 3106(b). In other words, if an insured breaches a warranty that is collateral to the risk that is the primary concern of the contract, the insured will not be precluded from recovery. This is generally not the case in maritime insurance contracts, however.

Under the federal rule and the law of most states, for the insured to recover under a maritime insurance contract, warranties must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract. *See Com. Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 31–32 (2d Cir. 1999) ("Under the federal rule and the law of most states, warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover."). The rule of strict compliance with warranties in marine insurance contracts stems from the recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on the representations and warranties made by insureds regarding their vessels' condition and usage. *See O'Connor Transp. Co. v. Glens Falls Ins. Co.,* 198 A.D. 136, 189 N.Y.S. 612, 614 (4th Dep't 1921), *aff'd,* 233 N.Y. 659, 135 N.E. 959 (1922); 6 *Couch on Insurance, supra,* § 83:20 ("In marine insurance, there is historically no requirement that the breach of warranty relate to the loss, so that any breach bars recovery even though a loss would have happened had the warranty been carried out to the letter.").

New York's Insurance Law specifically carves out a maritime exception from its general rule regarding breach of warranty. *See* N.Y. Ins. L. § 3106(c) ("This section [stating that breach of collateral warranties shall not preclude recovery] shall not affect the express or implied warranties under a contract of marine insurance."); *Levine v. Aetna Ins. Co.,* 139 F.2d 217, 218 (2d Cir.1943) (per curiam) (interpreting predecessor statute to N.Y. Ins. L. § 3106(c) and holding that "[c]ompliance with the warranty was a condition precedent to liability [under the contract of marine insurance] and afforded a complete defense irrespective of any question of causation"); *Advani Enters., Inc. v. Underwriters at Lloyds,* 962 F.Supp. 415, 419–20 (S.D.N.Y.1997), *vacated*

*on other grounds,* 140 F.3d 157 (2d Cir.1998) (New York Ins. L. § 3106, like federal rule, requires strict compliance with warranties in marine insurance contracts).

Here, it is undisputed that two of the Vessel's fire extinguishers and the Vessel's Halon 1301 system had last been certified and tagged in May 2014 and that those certifications expired in May 2015. ECF No. 56, Ex. 4 and Ex. 5. Because at least some of the Vessel's fire extinguishing equipment had not been certified and tagged for over four years at the time of the June 2019 grounding, GLI argues that Raiders breached the Policy's fire extinguishing equipment warranty, misrepresented its compliance with the 2016 Survey's recommendations, and therefore GLI is entitled to a declaration that the Policy is void.

Raiders argues that, despite the undisputed facts, Raiders did not breach the warranty nor make a material misrepresentation. Regarding the hand-held fire extinguishers, Raiders argues that Raiders complied with the 2016 Survey's recommendation to purchase and store additional extinguishers aboard and contends that the Policy's fire extinguishing equipment warranty provision does not require annual certification or tagging. *See* ECF No. 81 at 15–25. Regarding the Halon 1301 system, Raiders argues that re-certification and tagging would have been infeasible because the system is "obsolete." *See* ECF No. 81 at 6.

1. **Fire Extinguishers**

Raiders argues that the 2016 Survey's only recommendation regarding fire extinguishers was "purchase and store aboard," and Raiders complied with that recommendation. Raiders claims that, at the time of the 2016 Survey, the Vessel carried a total of 13 fire extinguishers aboard and in good working order. ECF No. 58-4, Ex. D (Pulley Dep. at 33:10–15, 34:2–13). Following the 2016 Survey, Raiders claims that Pulley purchased 5 additional fire extinguishers in 2016 and "store[d] [them] aboard" the Vessel. *Id.* at 34:2–4.

While Raiders is correct that the "Findings and Recommendations" section of the 2016 Survey only required Raiders to purchase and store fire extinguishers aboard, the Survey's "Fire Fighting & Safety Gear" section noted that the Vessel's existing fire extinguishers were expired. A "Comment" in that section stated:

> *Fire extinguishers, service and date tag. Portable fire extinguisher maintenance – ABYC A-4 Ap. 5.4.2. At least once a year, a full maintenance check should be made by a qualified fire extinguishing service facility in accordance with maintenance instructions on the name plate of the extinguisher. A tag should be attached showing the date of such maintenance check.

2016 Survey at 23. While this "Comment" was not explicitly labeled as a "Recommendation," Raiders was certainly on notice that certification and tagging of fire extinguishers on at least an annual basis was a necessary component of maintaining such equipment.

Raiders further argues that it complied with the express language of the Policy's fire extinguishing equipment warranty. That provision states:

> If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

ECF No. 1, Ex. F, Art. 9(k). Raiders argues that only the first sentence "delineates the requirements of the express warranty: (i) to install the equipment properly and (ii) to maintain it 'in good working order.'" *Id*.; ECF No. 81 at 15. Raiders contends that the second sentence "merely provides illustrative examples that help to define the warranty obligation," but does not itself impose any additional warranty requirements. ECF No. 81 at 16. Accordingly, under Raiders' interpretation, because nothing in the record suggests that the fire extinguishers were not properly installed or in good working order, Raiders fully complied. ECF No. 81 at 15.

Moreover, while Raiders claims that Pulley did weigh the tanks once annually, Raiders maintains that the final clause—"certification/tagging and recharging as necessary"—did not

15

"impose a *per se* obligation upon the insured to certify or tag any equipment" because the insured must only do so "as necessary." ECF No. 81 at 18–19, 24.

To aid in the interpretation of when certification/tagging is "necessary," Raiders concedes that "[t]he record includes two external sources of authority that provide guidance to Raiders, as the insured, in determining when (or whether) 'certification/tagging' of the onboard fire extinguishing equipment is 'necessary' under Article 9, Section (k): (1) materials issued by the manufacturers of the fire extinguishing equipment; and (2) the recommendations issued from the Nikula 2016 Survey conducted at Great Lakes' behest during the renewal process in 2016-2017." ECF No. 81 at 20; *see also* ECF No. 57-1 at 13. Raiders further claims that "[t]he manufacturers guidance establishes the standard for the 'as necessary' requirement under Article 9, Section (k) – unless an outside survey like the Nikula 2016 Survey provides for greater or different requirements." ECF No. 57-1 at 16.

As for the guidance provided by manufacturers' materials, Raiders claims that the Halon 1301 Owner's Manual is applicable to both the Halon 1301 system and the portable fire extinguishers, and the Manual does not require certification or tagging. *Id*. at 23–25; ECF No. 58, Ex. F.

As for the guidance from the 2016 Survey, Raiders claims that:

> [I]t is significant that the Nikula 2016 Survey makes no mention of any annual requirement to keep the "certification/tagging" current each year. The absence of a direct recommendation of this nature in the Nikula 2016 Survey further demonstrates that genuine factual questions exist concerning whether failure to recertify or re-tag the equipment on an annual basis – in fact – constitutes a breach of express warranty.

ECF No. 81 at 23. However, as discussed, the 2016 Survey did specifically comment on the Vessel's expired fire extinguishers and stated that "a full maintenance check" should be made and updated tags should be attached "[a]t least once a year." 2016 Survey at 23.

16

Raiders posits that finding Raiders in breach of warranty for failing to re-certify and re-tag fire extinguishers upon the extinguishers' annual expiration violates the principles of contract interpretation because such a finding would imbue the phrase "as necessary" with the same meaning as the previous clause's phrase "once a year." ECF No. 81 at 18–19. However, the tags on Raiders' fire extinguishers provide an option to specify whether the tags expire in 6 months or 12 months. *See* ECF No. 56-1, Ex. 4–5. Therefore, reading the warranty to require certification/tagging as necessary upon expiration does not render any part of the provision meaningless. Rather, it is Raiders' narrow interpretation of the term "as necessary"—such that certification/tagging was not "necessary" even when the tags were four years expired, despite the 2016 Survey's comments about the need for "[a]t least once a year" checks and re-tagging—is an interpretation that renders the phrase "as necessary" meaningless.

### 2. Halon 1301 Fire Suppression System

It is undisputed that Raiders did not "service and date tag" the Halon 1301 Fire Suppression System, as recommended by the 2016 Survey, and that at the time of the grounding, the Halon 1301 system's tags were 4 years expired. *See* ECF No. 56-1, Ex. 5. However, Raiders argues that this failure does not constitute a breach of warranty because the recommendation was infeasible. Raiders points to United States Coast Guard's website which states:

> [46 C.F.R. §]162.035 HALON 1301 TYPE FIRE EXTINGUISHING SYSTEM (OBSOLETE)
> APPROVAL GUIDANCE & INFORMATION: The production of Halon 1301 fire fighting agent was terminated effective January 1, 1994, and the installation of new halon systems on SOLAS ships prohibited. However, existing systems may be retained if in good and serviceable condition.

ECF No. 58-5. Raiders interprets this text to mean that the US Coast Guard has designated the Halon 1301 Type Fire Extinguishing System as "obsolete," and that therefore it is not possible to "service and date tag" it. ECF No. 57-1 at 5. However, as GLI notes, the word "obsolete" may be referring

17

to 46 C.F.R. §162.035, a defunct section of the Code of Federal Regulations. *See* ECF No. 61 at 2–3. Regardless of whether the Halon 1301 is deemed "obsolete," the USCG's guidance states that Halon 1301 systems are permitted to remain in use, so long as they remain in good and serviceable condition. Moreover, even if the Halon 1301 is "obsolete," that does not suggest that certification and tagging would have been impossible. Indeed, Raiders' Halon 1301 system was certified and tagged in May 2014, more than twenty years after the production of Halon 1301 systems was terminated and the installation of new Halon systems aboard SOLAS vessels was prohibited. ECF No. 56-1, Ex. 5.

As with the hand-held fire extinguishers, Raiders argues that its failure to certify and tag the Halon 1301 system was not a breach of warranty because such certification and tagging was not "necessary." *See* ECF No. 57-1 at 14. This argument falls flat given that the 2016 Survey specifically recommended the "service and date tag" of the Halon system, and Raiders conceded that its determination of necessity is guided by external sources such as the 2016 Survey. *See* ECF No. 81 at 20. Moreover, the parties' Policy warrants that, when a survey is conducted that results in recommendations, "all such recommendations are completed prior to any loss giving rise to any claim hereunder." ECF No. 1, Ex. F, Art. 9(r).

Even if Raiders had successfully shown that certification and tagging of the Halon system was impossible, a breach of an express warranty in a policy of marine insurance may still void coverage, even where compliance is impossible. *See Cont'l Sea Foods, Inc. v. New Hampshire Fire Ins. Co.*, 1963 WL 106271, at *3–4 (S.D.N.Y. June 13, 1963). Therefore, Raiders breached the warranty and the Policy is void.[3]

---

[3] In Count I of its Complaint, GLI seeks declaratory judgment that the Policy is void because Raiders misrepresented and/or failed to disclose its non-compliance with the 2016 Survey's recommendations. *See* ECF No. 1, ¶¶ 27–36. The parties' Policy states that the "contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this

## V.     CONCLUSION

Because Raiders breached an express warranty by failing to certify and tag its fire extinguishing equipment as necessary, the Policy is void. Therefore, Raiders' Motion for Partial Summary Judgment (ECF No. 57) will be denied, and GLI's Motion for Summary Judgment (ECF No. 56) will be granted.

Additionally, because Raiders' counterclaim Counts II-V are not cognizable under federal admiralty law or New York law, these counterclaims will be dismissed.

_s/ANITA B. BRODY, J.___<br>
ANITA B. BRODY, J.

---

insurance." ECF No. 1, Ex. F, Art. 9(n). Despite Raiders' failure to service and tag the Halon 1301 system following the 2016 Survey, Raiders' Compliance Letter attested that "all recommendations pertaining to the above vessel" detailed in the 2016 Survey "have been complied with." *See* ECF No. 58-3, Ex. C. Raiders argues that its notation "N/A" on the Compliance Letter under the column "Outstanding Recommendations" constitutes Raiders' representation that the 2016 Survey's recommendations "do not apply to the Vessel." ECF No. 81 at 8. "[A] marine insurance policy cannot be voided for misrepresentation where the alleged misrepresentation was not relied upon and did not in any way mislead the insurer." *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 871 (2d Cir. 1985) (quoting *Rose & Lucy, Inc. v. Resolute Ins. Co.*, 249 F. Supp. 991, 992 (D. Mass. 1965)). Because declaratory judgment will be granted to GLI on the basis of Raiders' breach of warranty, the Court need not reach GLI's misrepresentation claim, which seeks the same relief. Raiders' breach of warranty is sufficient to grant the relief GLI seeks, no matter the outcome of the misrepresentation claim.